57 158
74 457
74 462
57 158
76 293
57 158
79 285
57 158
102 545
57 158
103 13
103 14
57 158
109 409
109 414
57 158
117 660
57 158
121 223
57 158
h136 ²179
136 180
j136 ²187
57 158
152 ²449
57 158
156 ²635

ISABELLA McKELLAR v. CITY OF DETROIT.

*Title of act—Municipal liability for highway injury—Ice.*

1. The body of an act in Michigan must reasonably harmonize with the title, which is usually of controlling force in determining its scope.

2. How. Stat. § 1442–6, in giving a right of action for injuries from defective highways, streets, bridges, cross-walks and culverts, extends to townships, villages and cities alike, but applies only to injuries that are due to defects from being out of repair, and not to such as are caused by the mere accumulation of ice and snow.

3. Local usage goes far toward fixing public duties as to the care of highways in winter.

Error to the Superior Court of Detroit. (Chipman, J.) May 6.—June 3.

CASE. Defendant brings error. Reversed.

*Henry M. Duffield* for appellant. As to municipal liability for injuries caused by accumulation of snow and ice in the streets: *Hubbard v. Concord* 35 N. H. 52; *Stone v. Hubbardston* 100 Mass. 50; *Stanton v. Springfield* 12 Allen 566; *Hall v. Lowell* 10 Cush. 260; *Hutchins v. Boston* 12 Allen 571; *Johnson v. Lowell* id. 572; *Gilbert v. Roxbury* 100 Mass. 185, and see *Battersby v. New York* 7 Daly 16; *Stewart v. Woodstock & Huron R. Co.* 15 Q. B. (U. C.) 427.

*Brennan & Donnelly* for appellee. A municipality is liable for injuries caused by accumulation of snow upon improperly constructed sidewalks: *Luther v. Worcester* 97 Mass. 268; *McLaughlin v. Corry* 77 Penn. St. 109.

CAMPBELL, J. On the 10th of January, 1884, plaintiff, in the evening, slipped on a cross-walk at the corner of Prospect and Division streets, in Detroit, and fell and broke her arm. The occasion of her fall was claimed to be a small ridge of ice formed by the trampling of snow, and melting and freezing, until the surface was uneven. She recovered below, and the city brings error.

The case seems to have been fairly presented in all re-

spects, so as to raise two questions closely connected, which are—*first*, whether such a condition of things is such as is covered by the statute which gives a remedy for injuries on highways and cross-walks; and *second*, whether there is any liability without further notice than appeared here. Upon the question of damages the verdict was reasonable, and there are no other disputed points requiring attention.

It has been the settled law of this State that the right to recover depends entirely upon the statute, and the main question is dependent on its construction. Under our Constitution the title of an act is significant, and usually controlling in determining its scope, and in this case is of some importance. The body of the statute must reasonably harmonize with it, and in this instance there is substantial harmony.

This law is entitled "An act for the collection of damages sustained by reason of defective public highways, streets, bridges, cross-walks and culverts." Pub. Acts 1879, p. 223; How. Stat. §§ 1442–1446. In the body of the act the action is given for injuries by neglect to keep these in good repair, and in a condition reasonably safe, and fit for travel, by the township, village, city, or corporation whose duty it is to keep the same in good repair. § 1442. By section 1445 it is made the duty of townships, villages, cities, or corporations to keep in good repair, so that they shall be safe and convenient for public travel at all times. And power is given to levy such sum beyond the means formerly provided by law, not exceeding five mills on the dollar in each year, as will enable them to keep these easements "in good repair at all times." The liability is not to apply unless the municipality has had reasonable time and opportunity, after the ways become "unsafe or unfit for travel," to put them in "proper condition for use, and has not used reasonable diligence therein." § 1443.

This statute covers all classes of municipalities, and undertakes to deal with duties common to all of them. It was not designed to put villages and cities under any different obligations than townships, in regard to the good repair of such

ways as are to be kept in order. And, so far as our atten-
tion has been called to them, the statutes existing elsewhere
have made no essential difference. Cities naturally have many
more ways to look after, but the failure to do so involves no
different considerations. The judge who tried this case
expressed some doubt about it, but left it to be determined
by appellate proceedings, should the jury think a case made
out under his charge.

The decisions upon the liability of municipalities for win-
ter obstructions to ways, although several cases have been
decided, are not as numerous as might be expected if there
were any general agreement that ice and snow were to be
removed at the peril of the corporation. Mr. Dillon, in his
work on Municipal Corporations, has very little to say about
it, and the works on Negligence recognize the diversity of rul-
ing under statutes and the local common law. The New Eng-
land cases which were cited, and others which have been exam-
ined, appear to rest chiefly on ancient statutes which refer
expressly to the duty of keeping ways clear of snow and ice.
The later Massachusetts authorities are more guarded than
the earlier ones, and have required stricter proof of negli-
gence than formerly. The cases are very fully collected in
2 Eng. & Am. Corp. Cas. 565, 571, 572, 579, 588; 4 id.
626, 627. They agree that there is no responsibility unless
there has been such an accumulation as will amount to an
obstruction of the way which is dangerous, and they also
agree that a city is not liable for the manner in which its
walks and other structures and ways are planned. It may
perhaps be said that if the duty is absolute to remove such
slippery accumulations, there was enough to go to the jury
in this case, provided the city was sufficiently notified. But
the more important inquiry is whether the statute covers
such a case.

The natural meaning of the act, both in the title and in
the body, is to create liability only for having ways out of
repair and defective on that account. Several authorities
treat the class of obstructions in question as involving want
of repair and defects. But in the absence of statutes which

provide for them as such, it is not a natural construction, and the cases are more consistent which deal with these things as acts of negligence at common law. A great deal, however, may fairly depend on local usage in determining duties concerning highways in winter. Where it is customary to treat the removal of snow and ice as a regular part of highway management, the failure to look after it may be properly regarded as wrongful and negligent. In the eastern states this is done much more generally than elsewhere, and, as already suggested, the reported cases on the subject do not indicate anything like universal usage in that direction. There is probably not a single northern city or town where such accidents as that appearing on this record do not occur every year. The reports would present much more numerous precedents if it were the general supposition that such actions would lie.

We have never had a Michigan statute which made express provision for removing snow and ice; and the laws regulating highway labor, and the expenditure of highway money, are all framed on the theory that work will be done when the earth is uncovered. Our cities are empowered to clean their streets, and frequently to remove snow and filth; but this has seldom if ever been made obligatory, or treated as having anything to do with street repairs or defects. It is possible that highway money may have been expended in towns and villages to clear the tracks in winter; but if so, the instances are exceptional, and not within the language of any statute. The powers and duties of cities concerning highways, as laid down by the general incorporation act, are, except as designated, put on the same footing as those of townships. How. Stat. § 2635. They are empowered to require abutters on the streets to remove snow and ice from the sidewalks, and to do it for them on default; but no such reference is made as to cross-walks. §§ 2636–2641. The village act is still narrower in its operation, although similar. How. Stat. § 2855.

Our statutory system has been devised to meet the necessities of a rapidly developing country, thinly settled in many

places, and with cities covering much larger spaces than
would be required for a stationary population.    It would be
a great hardship and involve ruinous expense if all of the
multitudinous ways that are subject to be affected by winter
storms are to be constantly watched and diligently kept in
thoroughly good condition.   Most communities may be re-
lied on to do what is necessary and feasible.   But no amount
of diligence can supply an adequate force and adequate
means to detect the inevitable accumulations of snow tram-
pled into hardness on every cross-walk or in every roadway.
In the city of Detroit it is estimated that there are more
than 10,000 cross-walks inside of the suburbs.   Except dur-
ing winter there is not much risk that dangerous defects will
be numerous or unnoticed.   A walk properly laid may be
relied on, except as against very long wear or active mis-
chief.   But a few passers-by will trample the snow into
ridges, and the work of removing them would be enormous.
The charter makes no adequate provision for doing it,
or for finding out its necessity.   The municipal police,
although required to use vigilance, and be faithful in
doing so, is not a city agency in any sense, and there is no
other agency in the appointment of the city, and for which
the city could justly be held responsible, that could gather
information in winter that would be at all available to secure
any universal and efficient care of the streets and cross-walks.
In Rhode Island, after the decision in *Providence v. Clapp*
17 How. 161, which construed the statutes as binding the
the city by constructive notice of ice accumulations, the law
was so changed as to exonerate from liability unless express
notice was given to the city authorities of the danger exist-
ing.   Such a rule is just and sensible, where the liability
exists at all, because such dangers are apt to exist in many
places at the same time.   It would certainly be a violent
presumption that any proper city official of Detroit actually
knew of the existence of the ice-ridge on this particular
cross-walk.   And it would be still more singular if at the
same time there were not several hundred, if not several
thousand, similar places in the city.

It is possible that some legal duty ought to exist for clearing off such ridges as they are raised by the feet of passengers; but to provide for it by means which will be reasonable and not oppressive on the many towns and municipalities throughout the State will be a task of some difficulty. We are satisfied no such liability has thus far been provided for.

We think there was no cause of action made out, and that the judgment must be reversed. As the want of jurisdiction appears on the record, there is no ground for a new trial.

SHERWOOD and CHAMPLIN, JJ., concurred. COOLEY, C. J., did not sit.