BOWEN v. CITY OF DETROIT.[1]

MUNICIPAL CORPORATIONS — DEFECTIVE STREET — ICE — PERSONAL INJURIES—LIABILITY.

In an action against a city for a personal injury received in consequence of slipping on a hummock of ice on a street crossing, testimony of a road foreman that he left the street in proper condition six hours before the accident happened is not so conclusive of defendant's lack of negligence as to warrant directing a verdict in its favor, where plaintiff's witnesses testify to the presence of the defect.

Error to Wayne; Rohnert J. Submitted November 12, 1907. (Docket No. 151.) Decided December 30, 1907.

Case by William H. H. Bowen against the city of Detroit for personal injuries. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Reversed.

*Codd & Hall*, for appellant.

*J. Walter Dohany* ( *Timothy E. Tarsney*, of counsel ), for appellee.

---

[1]Rehearing pending.

Plaintiff, while walking across Third street, on February 20, 1904, from the Wayne hotel, in the city of Detroit, towards the Michigan Central depot, slipped, fell, and was injured.   There had been a rain.   The weather suddenly becoming very cold, ice formed over the street, and it was very slippery.   The entire street, including crossings as well as River street which there forms a junction with Third, was paved.   The street and crossings were upon the same level and of the same material.   There were no gutters. From the center of the street to the curbs there was a gradual incline.   The curb on each side was about 6 or 7 inches high.   There was a catch-basin a few feet along the curb on River street, and another a few feet along the curb on Third street.   The day was one of the coldest of the winter.   Snow had fallen upon, and was mixed with, the ice.   Plaintiff with three others came out of the hotel on River street, crossed to the opposite or west side of Third, and when within from 4 to 6 feet of the curb he fell.

Plaintiff claims that a trench was dug about 18 inches wide, between these two catch-basins, through the snow and ice; that some of the ice and snow from the trench was thrown out across the walk, forming an elevation, and that for this condition of affairs the city was responsible.   Plaintiff's counsel state his claim as follows:

"It is claimed by the plaintiff in this case that the ice in the street was on a level with the sidewalk, and if left alone would have formed a natural bridge, but that when a trench was dug out along the curb, 18 or 20 inches wide, and from 5 to 8 inches deep, this was a dangerous condition of the cross-walk which would subject the city to liability."

Plaintiff introduced an employé of the city, one Clemens, a road foreman, who testified to the slippery condition of the streets and sidewalks of the city and at the place in question; that he caused the ice and snow to be removed across Third street, in a direct line with the sidewalk on River street, from curb to curb, eight feet wide, and as near to the pavement as possible.   This work was

done on the mornings of the 19th and 20th. He testified that all that was left in that space, from curb to curb, was ice that was frozen to the pavement. The snow and ice from this eight-foot strip was thrown on the sides. He testified that there was no trench. On each side of the cleared space near the curb the ice and snow was thrown out so as to permit the water to run to the catch-basins. It was daylight, and, as the witnesses who were with the plaintiff testified: "There was not the slightest difficulty in seeing where we were going,— perfectly bright, as I remember it."

Plaintiff saw no obstruction. He testified that it was very slippery, and he was walking carefully; that "there was no difficulty in seeing right straight in front of me, where I was walking along."

Plaintiff's witness Cahalan, who was accompanying him, testified that there was a trench, and that "the side of it toward the Wayne hotel was sloping with a thin covering of snow over it," and that the ridge extended slightly above the curb an inch or two, to the best of his recollection.

Another witness, one Ramsay, who accompanied plaintiff, testified that plaintiff slipped "on a kind of a little hillock of ice, five or six inches, as he observed it with his eye;" that the trench extended down near to the surface of the street. He further testified:

"There was a path; it was right across the street in a direct line with the pavement; I should say it was six or eight feet wide, that led from curb to the other. We had lots of snow about that time and we could see where the snow had been swept to one side, and the coating on the street proper was icy; there must have been a couple of inches of ice on the street."

On cross-examination he testified:

"There was not a great deal of rise. I noticed it after he fell. * * * I cannot tell now whether the rise was gradual or not. If there had been an abrupt rise of six or seven or eight inches, I would have noticed it."

The court directed a verdict for the defendant, holding that plaintiff's own evidence showed that the street was in proper condition on the morning of the 20th, and that if there was any defect caused by deepening the trench or throwing up an obstruction during the day, there was nothing to show that the city was responsible for it, or had notice thereof sufficient to fix liability upon it.

GRANT, J. (*after stating the facts*).     The sole claim of the plaintiff is that the defendant city caused the obstruction by digging the trench and throwing the ice and snow across the path cleared for foot passengers.     The court based its ruling upon the testimony of the witness Clemens, holding that there was nothing in the case tending to cast doubt upon his testimony.     In this we think the court erred.     According to the testimony of the witness Cahalan there was a ridge about eight inches high across the path, close to the trench, composed of ice and snow, which a jury might infer was thrown there by those who dug the trench and cleared the path.     Mr. Clemens testified that the work was finished about six hours before the accident happened.

We are unable to say, upon this record, that the testimony of Clemens conclusively established the fact that he left the path free from obstruction from curb to curb a few hours before.

Judgment reversed, and new trial granted.

McALVAY, C. J., and CARPENTER, BLAIR, and MOORE, JJ., concurred.