PRINGLE v. CITY OF DETROIT.

HIGHWAYS AND STREETS—DEFECTIVE SIDEWALKS — PERSONAL IN-
JURIES—ICY WALK—EVIDENCE—SUFFICIENCY.

In an action against a city for personal injuries received from
a fall on a defective sidewalk, evidence examined, and *held*,
that a verdict was properly directed in defendant's favor, for
the reason that no more was shown than that, in the course of
a journey made perilous by an accumulation of ice due to
natural causes, plaintiff unfortunately slipped upon the ice
and was injured.

Error to Wayne; Donovan, J. Submitted February
18, 1908. (Docket No. 37.) Decided May 1, 1908.

Case by Annie Irene Pringle against the city of Detroit
for personal injuries. There was judgment for defendant
on a verdict directed by the court, and plaintiff brings
error. Affirmed.

*H. M. & D. B. Duffield*, for appellant.

*J. Walter Dohany* ( *Timothy E. Tarsney*, of counsel),
for appellee.

OSTRANDER, J. Plaintiff was injured on the afternoon
of February 10, 1904, in daylight, by slipping and falling
on an icy sidewalk. She sued the defendant city and
upon the trial of her case a verdict for defendant was
directed by the court. No testimony was offered for de-
fendant. Two principal contentions are urged here by
plaintiff in error, which are:

" *First.* The trial judge having directed a verdict for
the defendant because the plaintiff slipped on an icy walk,
it necessarily must follow that he was in error in taking
the case from the jury, unless the evidence clearly shows
such to be the fact. If there was any reasonable doubt
as to whether plaintiff did slip on the ice or not, then that
question should have been submitted to the jury. We

therefore claim that the trial judge was in error because he did not leave it to the jury to determine whether the plaintiff slipped on ice or not.

"In the second place, even supposing that plaintiff slipped on ice, then it was error not to submit to the jury for determination the question whether the defective condition of the sidewalk accumulated ice artificially."

Plaintiff fell at a place where a wooden walk had existed, had been removed and a cinder foundation had been laid for a cement walk. It was not completed because begun too late in the season. The cinders were confined, as is usual, by timbers or stringers marking the width of the walk, and had been leveled. It does not appear that they had been rolled. There were no houses on the lots in front of which the walk was laid. No one saw plaintiff fall. The alleged improper condition of the sidewalk is described in the declaration, in the first count, as follows:

"Said sidewalk was not in proper repair and safe condition in that loose cinders had been laid in a soft condition as and for a sidewalk and said cinders had been left in such loose and soft condition."

In the second count the allegation is:

"Cinders had been spread for the foundation of a stone or cement sidewalk to be built or laid thereafter, and were allowed to remain in that condition for an unreasonable length of time and until the same became and were unsafe and dangerous to walk upon and over as hereinafter described. Persons walking on these cinders left an impression where they had stepped, and thereafter in the natural course of the seasons cold weather came and the sidewalk froze up hard, leaving a very rough and uneven surface."

The manner in which plaintiff received her injury is set out, in the first count, as by a fall while she, using due care, was passing over the walk; in the second count, as by a sudden fall while she was "proceeding along said sidewalk with great care to avoid slipping or stumbling over the rough places."

A brief reference to local conditions is required. On

February 1, 1904, the snow on the ground was 14 inches deep on a level, and on February 2d there was about 14½ inches of snow, with a maximum temperature of 25 degrees and a minimum of 17 degrees. On February 3d, the maximum temperature was 13 degrees, the minimum 4 degrees. On the 5th, the maximum was 39 degrees, which somewhat reduced the snow; the minimum temperature for that day was, however, 9 degrees. From 7 p. m. on the 6th to 7:50 p. m. on the 7th, a severe rain had reduced the depth of snow from about 11 inches to 4 inches, and at 11 p. m. on the 7th the temperature had fallen to 7 degrees. The highest temperature on the 8th was 8 degrees and the lowest 1 degree, and on the 9th the highest temperature was 12 degrees and the lowest 1 degree. The same condition existed on February 10th, with a slight fall of snow in the early morning. The walk in question was not cleaned and its condition, except for such travel as occurred, was the condition in which it was left by the elements. A witness for plaintiff familiar with the walk described it as rough and hard to walk over; that it was not smooth, but was smooth where there was ice; that the cinders were lumpy and there were depressions filled with water and then elevations where the ice did not cover the cinders; the roughness was caused by different sized cinders, loose and ground down—some pieces small and others large—half of it frozen over. All the walk was not rough, some of the cinders were rough, and the general appearance was that of a rough walk.

In attempting to pass over the street, plaintiff chose this cinder way as affording the best footing in the vicinity and this because in places cinders appeared above the ice. She picked out the cinders in order to miss the ice. She had known the walk from the time, in the preceding October, when the cinders were drawn there, and had been over it several times before they were leveled; she had never before been over it after they were leveled. Her testimony leaves no room to doubt the cause of her fall. She slipped on ice.

"Why, I slipped and fell, and just as quick as I fell I lost consciousness from the pain. * * * I slipped and fell. * * * I did not stub my toe against anything. * * *

" *Q.* You did not catch your foot in anything, in any wire or in any obstruction?

" *A.* No, sir.

" *Q.* You did not catch your toe on any obstruction?

" *A.* No, sir.

" *Q.* And trip down?

" *A.* No, sir.

" *The Court:* Do I understand you tripped and fell or slipped?

" *A.* I slipped and fell down.

" *Q.* If it had not been for the ice you would not have slipped?

" *A.* I think I slipped going through there more or less.

" *Q.* So if it had not been for the ice you would not have slipped?

" *A.* I do not think so. * * *

" *Q.* Then it was the ice that caused it?

" *A.* I do not know whether I could slip on cinders or not, if they crumbled under my heel it would be very bad slipping.

" *Q.* Then it was the ice that caused you to slip?

" *A.* It was the combination."

Further references to the testimony of plaintiff are hereinafter made. She does not claim that her fall was occasioned otherwise than by slipping on ice. The court was not in error in assuming the fact to be established.

The person who found plaintiff and assisted her testified that near where she was lying there was a wagon track five or six inches deep "running across." It is assumed that he meant running across the cinder walk. Plaintiff herself testified that there was a track there of a big moving van, and again:

"There was a groove about that deep (indicating) in which my heel went and turned my ankle. * * * I really fell in a groove. * * * I do not remember whether it was with my right foot that I slipped on this glassy place, or whether it was my left foot, but I do remember that my right foot went into this groove. I do

not remember what foot I had down when I slipped. I turned my ankle in and it threw me around that way facing the inside with my head toward the north.  *   *   *

"*Q.* Now, Mrs. Pringle, do you want to tell us that you turned your ankle instead of your foot slipped, as you told me a few minutes ago?

"*A.* It was the slip that turned my foot.

"*Q.* And then your foot did go out from under you like a flash as you told me a few minutes ago?

"*A.* Yes, sir, it certainly did.

"*Q.* Flew right from under you?

"*A.* I do not know how, but I know it turned under me.

"*Q.* Your foot flew out and you fell facing the north?
"*A.* Yes, sir.  *   *   *

"*Q.* Now, you do not know whether your ankle turned before your foot slipped, or turned just after it slipped, it was all done so quick?

"*A.* It was all done very quickly, but I think.

"*Q.* I want to know what you know?

"*A.* I am almost sure.

"*Q.* Do you want to be understood to tell these gentlemen that you remember?

"*A.* I remember my foot flew out that quick.  ·  ·

"*Q.* You remember your foot flew from under you and you fell facing the north?  ·

"*A.* Yes, sir."

It is the theory of counsel for plaintiff that the case made presented the question of fact whether the accumulation of ice was due to natural causes only, see *McKellar* v. *City of Detroit*, 57 Mich. 158; *Kannenberg* v. *City of Alpena*, 96 Mich. 53; *Rolf* v. *City of Greenville*, 102 Mich. 544; *Gavett* v. *City of Jackson*, 109 Mich. 408 (32 L. R. A. 861); *Wesley* v. *City of Detroit*, 117 Mich. 658, or whether such accumulation, and the resulting condition, was due to an original defective condition of the walk; whether the combination of ice and cinders which existed was not the cause of her injury and referable directly to an original defective condition of the walk. See *Navarre* v. *City of Benton Harbor*, 126 Mich. 618, and *Burrell* v. *City of Greenville*, 133 Mich. 235.

We find no testimony to support the proposition that the walk as laid was defective or dangerous; it was simply not completed. It is matter of common knowledge that it would be likely to accumulate less ice than the completed walk would have done. The testimony supports this view. We find no testimony tending to prove that the peril which plaintiff faced was increased by the manner in which the sidewalk was constructed. Her testimony and her actions are strongly opposed to such a conclusion. Her actions approved this as the way of least peril. Her testimony is not in harmony with the theory that the general surface of the walk was dangerously uneven or that it was not substantially level at the point where she slipped and fell. If the groove or wheel track in the walk played some part in the matter, that defect is not connected with the original construction of the walk and its existence is not brought to defendant's knowledge by actual or by constructive notice. We assume that the court, in directing a verdict, had in mind the averments of the declaration. Those averments require that there be established some causal connection between the manner of constructing the sidewalk and the injury which plaintiff suffered. Indulging, as we must, that view of the testimony most favorable to plaintiff and all reasonable inferences therefrom which favor her, we still think that no more is shown than that, in the course of a journey made perilous by the ice, she most unfortunately slipped upon the ice and was injured.

The judgment is affirmed.

GRANT, C. J., and BLAIR, MONTGOMERY, and MOORE, JJ., concurred.