JEFFERSON v. CITY OF SAULT STE. MARIE.

MUNICIPAL CORPORATIONS—ICE AND SNOW—CLEANING SIDEWALKS.

A city is not liable for personal injuries caused to a person on the sidewalk by slipping on a ridge of ice or snow left in the center by a snowplow, whether the icy condition was caused by water dripping from the eaves of a building or by snow packed in the center of the walk by its ordinary use.[1]

[1] As to liability of city for injury resulting from snow or ice on streets or sidewalks, see note in 20 L. R. A. ( N. S.) 656.

Error to Chippewa; Steere, J.  Submitted November 29, 1910.  (Docket No. 79.)  Decided March 31, 1911. Rehearing denied September 29, 1911.

Case by Helen Jefferson against the city of Sault Ste. Marie for personal injuries.  Judgment for plaintiff.  Defendant brings error.  Reversed and no new trial ordered.

*Sherman T. Handy,* for appellant.

*John W. Shine,* for appellee.

Hooker, J.  The plaintiff slipped and fell on an icy sidewalk in the city of Sault Ste. Marie, thereby breaking a leg.  She has recovered a judgment for $700 against the city, which has appealed.

The negligence charged is:  *First.* That the city was negligent in allowing a ridge of snow to remain in the center of the walk as an alleged result of cleaning the walk with a snowplow.  *Second.* In permitting ice to form upon said walk and ridge as a result of water dropping upon it from a 10-inch wooden projection on the face of an adjacent building from the melting of snow upon it. Sault Ste. Marie is shown to have 33 miles of sidewalks, and these are cleared with snowplows at city expense. There is much testimony to the effect that a snowplow does not and cannot clear the walk in the center as well as it does at the edges of the walk where people have not trodden.  This is a fact of common knowledge and has been mentioned several times in decided cases.  In *Mc-Kellar* v. *City of Detroit,* 57 Mich. 158 (23 N. W. 621, 58 Am. Rep. 357), it was said:

" A few passers-by will trample the snow into ridges, and the work of removing them would be enormous."

In the case now before us several witnesses testified that this walk was in much the same condition as to a ridge of snow or ice in the center as all of the walks in town, and we have discovered no substantial contradic-

tion of this testimony. We cannot hold, and a jury should not be permitted to find, that a city is liable for not clearing walks. We have held many times that the statute imposes the duty upon cities to keep streets in reasonable repair and in a condition reasonably safe for public travel. Hence we find many cases holding cities negligent in placing or permitting sand piles, building materials, and other obstructions in the ways. On the other hand, we have often held that accumulations of snow and ice which come from natural causes are not covered by the statute, and that a city is not negligent if it omits to protect pedestrians from the dangers to life and health which attend the use of streets and walks covered with snow. Even the danger of falls in slippery places on ice upon the walks is one against which the pedestrian must protect himself ordinarily, for the city is under no obligation to remove either snow or ice.

There are, however, some cases where cities have been held liable for creating obstructions with snow or ice; cases, as plaintiff's counsel say, "where the city was an active agent in placing the obstructions," *e. g.*, in *Bowen* v. *City of Detroit*, 150 Mich. 546 (114 N. W. 344). When the employés of the city engaged in cutting ice out of a gutter were said to have thrown chunks of ice and snow upon a crosswalk upon which plaintiff fell, which was disputed, we said the court should have submitted the question to the jury, thereby implying, if not expressly deciding, that a city might incur a liability for cutting and piling ice upon its crosswalks. The case of *Johnson* v. *City of Marquette*, 154 Mich. 50 (117 N. W. 658), was a somewhat similar case, where a city was held negligent in permitting a steam railroad company to pile snow removed from its highway crossing upon each side of its track in the highway, whereby a team of horses was frightened and injured third persons. The case recognized the general rule and rests upon the artificial character of the obstruction, and is easily within the sand cases mentioned. It is upon these two cases that counsel

predicates his contention in the present case, claiming that the *Marquette Case* and this are alike in principle, *i. e.*, that the obstruction in the *Marquette Case* was an obstruction caused by throwing snow from one part of the street to another, thus forming a ridge, or obstruction, while, in this present case, the ridge or obstruction was caused by leaving a portion of the hard, icy snow in the center of the walk, and removing the untrodden snow from each side, thus making a ridge.

Every person knows the convenience of cleaning paths in winter. Every one does it to some extent and has to do it for the convenience of himself and family. We know how the good citizen cleans his sidewalk. In the center where men tread the snow' accumulates because of the difficulty in getting it off, but he does not refrain from keeping the walk more nearly clean near the edges. But every one does not clean his walk, well or seasonably. It is at least questionable whether he ought to be or can be compelled to do so for public convenience, and, moreover, the cheaper, more expeditious method, and the only fairly economical and practical way, is to run an old-fashioned snowplow over the walk for the purpose of taking, not all ice and snow, but no ice and only so much snow as can readily be removed by scraping with so rude a contrivance as a snowplow. This method and this degree of efficiency are accepted and approved by the community, as appears from their general adoption, and it is reasonable to suppose that society has not understood that it is to be penalized for its effort toward the ameliorations of the annoyance and inconvenience of snow and that the effort to aid all carries with it the responsibility of removing ice as well as snow to which the plow is not adapted, and which was not within the design. Neither has it the obligation of seeing to it that the snow, where undisturbed, shall not be removed below the level of the packed portion where removal is not feasible or is too expensive. Nor need it remove all ice on one or both portions which may result from the falling or dripping of water from buildings upon

the walk. It seems to us more reasonable to say that we may take judicial notice of the everyday necessities and practices that the removal of snow as it falls is for the welfare of all, that such removal down to as near the walk at any or all points, as is reasonably feasible, is desirable and proper, that such inequalities as this, which are known to be inevitable, are the necessary accompaniment of this very necessary and commendable practice, and private misfortunes arising from the casualties of winter furnish little excuse for attempting to impose the burden resulting to individuals upon the community. They certainly do not, in our opinion, justify the extension of the rule followed in the cases mentioned.

It is not difficult to see that the principle relied on in those cases is not necessarily involved here, for the city has not placed snow and ice under the feet of its citizens, but has merely taken some away, thereby attempting and making an improved condition. By looking at the authorities a little further, we will find the limitations mentioned well and clearly pointed out.

In *McKellar* v. *City of Detroit*, 57 Mich. 158 (23 N. W. 621, 58 Am. Rep. 357), this court said that:

"The statute in giving a right of action for injuries from defective highways, etc.,   *   *   *   applies only to injuries that are due to defects from being out of repair, and not to such as are caused by the mere accumulation of ice and snow."

In treating of that accident, which, like the one in this case, was a fall upon ice, the court said:

"There is probably not a single northern city or town where such accidents as that appearing on this record do not occur every year. The reports would present much more numerous precedents if it were the general supposition that such actions would lie.

"We have never had a Michigan statute which made express provision for removing snow and ice; and the laws regulating highway labor and the expenditure of highway moneys, are all framed on the theory that work will be done when the earth is uncovered. Our cities are

empowered to clean their streets, and frequently to remove snow and filth; but this has seldom if ever been made obligatory, or treated as having anything to do with street repairs or defects. It is possible that highway money may have been expended in towns and villages to clear the tracks in winter; but, if so, the instances are exceptional, and not within the language of any statute. * * *

" Our statutory system has been devised to meet the necessities of a rapidly developing country, thinly settled in many places, and with cities covering much larger spaces than would be required for a stationary population. It would be a great hardship and involve ruinous expense if all of the multitudinous ways that are subject to be affected by winter storms are to be constantly watched and diligently kept in thoroughly good condition. Most communities may be relied on to do what is necessary and feasible. But no amount of diligence can supply an adequate force and adequate means to detect the inevitable accumulations of snow trampled into hardness on every crosswalk or in every roadway. In the city of Detroit it is estimated that there are more than 10,000 crosswalks inside of the suburbs. Except during winter there is not much risk that dangerous defects will be numerous or unnoticed. A walk properly laid may be relied on, except as against very long wear or active mischief. But a few passers-by will trample the snow into ridges, and the work of removing them would be enormous. The charter makes no adequate provision for doing it, or for finding out its necessity."

The next case involving a charge against a city in an ice or snow case was *Kannenberg* v. *City of Alpena*, 96 Mich. 53 (55 N. W. 614). In this case a freshet choked a catch-basin, and water overflowed the walk and froze. We held that this was not an artificial obstruction, but one due to natural causes, and denied relief. In this case counsel relied upon some cases where cities had neglected hydrants or waterspouts, whereby water overflowed and froze upon walks. We distinguished these from ice formed by natural causes, and later refused to follow the latter in *Gavett* v. *City of Jackson*, 109 Mich. 408 (67 N. W. 517, 32 L. R. A. 861).

*Rolf* v. *City of Greenville*, 102 Mich. 544 (61 N. W.

3), was a case which shows another phase of this question. We are unable to tell whether a snowplow was used or not. At all events, the walk was covered by snow which melted off more toward the edges and left ice where it had been trodden, and plaintiff slipped and fell. The situation was practically the same as in this case, viz., the removal of only a portion of the snow, and the sloping ridge, if the name "ridge" is, either in that or this case, an appropriate term to use. It was held to be ruled by the *Kannenberg Case, i. e.*, the legislature had not imposed the duty to provide against the accidents resulting from conditions of snow and ice due to natural causes, as Mr. Justice CAMPBELL had said in that case.

*Hutchinson* v. *City of Ypsilanti*, 103 Mich. 12 (61 N. W. 279), is also in point. Here it was held that the removal of snow from walks and street car tracks into the gutter, when they changed to ice upon which plaintiff's cutter was overturned, was not negligence on the part of the city.

*Gavett* v. *City of Jackson, supra*, was a case where ice froze from water which came from a roof through a down spout and was delivered on the walk. In that case the contention was made that the city was negligent in not preventing this, and one opinion in the case sustained the plaintiff's contention. The majority, however, followed the earlier cases, and held that this was ice formed from natural causes, and that the city was not liable for not providing some way for keeping it off from the walk, or preventing the formation, or taking steps to remove the ice. Mr. Justice GRANT recognized the rule regarding artificial obstructions applied in the first mentioned cases, but said it had no place upon that record.

Again, the rule was applied in *Wesley* v. *City of Detroit*, 117 Mich. 658 (76 N. W. 104). . See, also, *Pringle* v. *City of Detroit*, 152 Mich 445 (116 N. W. 362).

There is another class of snow cases, such as *Canfield* v. *Railway Co.*, 78 Mich. 356 (44 N. W. 385), and *Black*

v. *City of Manistee*, 107 Mich. 60 (64 N. W. 868), where liability is made to rest upon the effect of a defect in the construction of the road or way as a cause of the injury. Such a case is *Navarre* v. *City of Benton Harbor*, 126 Mich. 618 (86 N. W. 138). We are of the opinion that the present case is fully covered by the cases cited, and that whether the cause of the fall was ice made by reason of water for which the city was in no way responsible, or from snow which was trodden down and tramped in and frozen, or from the crowning snow left on the walk through the inability of the city to scrape the hard snow, no liability exists. We are of the opinion that the judgment should be reversed, and no new trial ordered.

OSTRANDER, C. J., and MOORE, MCALVAY, and BROOKE, JJ., concurred.