Ernest F. KREMER, Appellant,

v.

CARR'S FOOD CENTER, INC., Appellee.

No. 1131.

Supreme Court of Alaska.

Dec. 22, 1969.

James K. Tallman, Anchorage, for appellant.

George N. Hayes, and John K. Brubaker, of Delaney, Wiles, Moore, Hayes & Reitman, Anchorage, for appellee.

Before DIMOND, RABINOWITZ, BONEY, and CONNOR, JJ., and FITZGERALD, Superior Court Judge.

## OPINION

RABINOWITZ, Justice.

The central issue in this appeal concerns the trial court's entry of a directed verdict against appellant Ernest F. Kremer.

In the superior court, Kremer instituted a personal injury action against appellee Carr's Food Center, Inc. In his complaint, Kremer alleged that he was a business invitee of Carr's and while walking in the latter's parking lot slipped and fell as a result of accumulations of ice and snow which had been permitted to form into "deep ruts and sharp ridges" which were dangerous.[1] After Kremer had rested his case in chief, Carr's moved for a directed verdict. The gravamen of Carr's motion was that "natural accumulations of ice and snow" cannot furnish the basis for a claim of negligence, particularly in the circumstance where such ice and snow conditions are as well known to the plaintiff as to the defendant. The superior court granted Carr's motion and entered judgment against Kremer. The basis of the trial court's decision to grant the motion for directed verdict is disclosed in the following portions of the court's oral decision.

[If the] hazardous condition had been created by the defendant * * * then the case would have gone to the jury. But, in the circumstances of the natural accumulation then I believe that it goes to the—to the business invitee as well as to a licensee. The law of the case is just against the plaintiff's position at this point with the evidence in the case.

So, I'm obliged to grant the motion for a directed verdict.

We hold that the trial court was mistaken.

Shortly prior to midnight on March 17, 1966, Kremer, then 66 years old, walked to Carr's supermarket in order to purchase food. In the course of attempting to traverse the parking lot of Carr's supermarket, his attention was drawn to an approaching vehicle. According to Kremer, he "was concerned about it because it was late at night and [he] * * * didn't know whether the driver would see [him] * *." The approaching car did stop and at approximately the same time, Kremer slipped in a rut, fell, and suffered personal injuries for which he brought suit against Carr's.[2]

According to Kremer's testimony, the rut which caused his fall was 6 inches deep and was located approximately 10 feet from the main entrance to Carr's supermarket.[3] The rut was apparently created by the action of automobile tires on the ice during the day when the ice was in a melted condition. It was also established that the parking lot at the time in question had not been scraped by Carr's; that no salt or sand had been applied to the ice in the parking lot; and that no employees were ordered to, or were engaged in, clearing the parking lot of ice and snow on the evening in question.[4] Kremer's evidence further established that the surface of the parking lot was "extremely slick" and that at least one employee of Carr's had slipped and fallen on it that day. Kremer also testified that he could distinguish the surface conditions of the parking lot because the area was lit, and that he knew the surface

1. In its answer, Carr's denied any negligence on its part and asserted separate affirmative defenses of assumption of risk and contributory negligence.

2. Kremer testified that the car "did pull up and then I slipped in one of those deep ruts and it flipped me over and knocked me flat on my side on the ice."

3. Ralph Westover, a witness for appellant, testified that the ruts were 3 to 4 inches deep and were located some 20 to 25 feet from the entrances.

4. In determining motions for directed verdicts, the evidence must be viewed in the light most favorable to the party against whom the motion was made. Howarth v. Pfeiffer, 423 P.2d 680, 682 (Alaska 1967).

was icy but he had not seen the ruts in the ice before falling.[5]

■ Determination of whether the trial court correctly ruled on Carr's motion for directed verdict requires resolution of the issue of whether Kremer's evidence raised a jury question as to a breach by Carr's of any duty of care it owed to Kremer. We have concluded that Kremer's evidence did present a jury question, and that the trial court therefore erred in determining the issue of liability as a matter of law. This holding follows from our decision in Chugach Electric Association v. Lewis[6] where, in regard to the duty owed by a possessor of land to a business invitee, we said the criteria of Restatement (Second) of Torts Section 343 (1965) is determinative.[7] Section 343 provides as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Section 343 is controlling here. A jury could have found: (a) that Carr's possessed the parking lot and knew the condition of its surface, (b) that Carr's should have realized that this condition involved an unreasonable risk of harm to its business invitees, (c) that Carr's should have expected that its business invitees would not discover or realize the danger, or should have anticipated that they would fail to protect themselves against a danger they did discover or realize, or should otherwise have anticipated harm to invitees despite the fact that the danger was known or obvious to them,[8] and (d) that Carr's

---

5. Since there was testimony that Carr's managers had to walk across this same general area to gain access to the supermarket, it can be reasonably inferred that they had knowledge of the surface conditions of Carr's parking lot.

6. 453 P.2d 345, 348–349 (Alaska 1969).

7. In the *Chugach* case, it was stated in part that:
   What we are concerned with here is the law which imposes obligations upon a possessor of land toward an invitee. Appellee was a species of invitee—a business visitor * * *. The relationship also subjected appellant to liability to appellee for physical harm caused by a condition of the land if appellant knew or by the exercise of reasonable care would have discovered the condition and should have realized that it involved an unreasonable risk of harm to appellee, provided again, however, that appellant should have expected that appellee would not discover or realize the danger or would fail to protect himself against it.
   *Id.* at 348–349 (footnotes omitted).
   Restatement (Second) of Torts § 332 (1965) provides:

(1) An invitee is either a public invitee or a business visitor.
   *     *     *     *     *
   (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.
Appellee Carr's concedes that Kremer was its business invitee at the time the fall occurred.

8. Restatement (Second) of Torts § 343A (1) (1965) provides:
   (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
   Illustration 5 of this section of the Restatement offers the following where the danger involved in slipperiness:
   A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work, slips

failed to exercise reasonable care to protect business invitees, such as Kremer, from the dangerous surface conditions in its parking lot.

■■ In reaching these conclusions, we have rejected Carr's contention that no cause of action can be maintained by a business invitee against a landowner for injury resulting from a slip and fall occasioned by natural accumulations of ice and snow.[9] We have also declined to adopt Carr's argument to the effect that any duty of care owed by a possessor of land to a business invitee is discharged by virtue of the invitee's knowledge of the dangerous condition of the land.[10] Finally, our holding in the case at bar reflects the view that none of our own prior precedents preclude the result reached here.

Concerning this last point, Carr's contends that a trilogy of past slip and fall decisions rendered by this court requires us to sustain the trial court's grant of a directed verdict against Kremer. Ogden v. State,[11] Morrison v. City of Anchorage,[12] and Hale v. City of Anchorage [13] comprise this trilogy. In the Hale case, this court concluded that

> a municipality is not liable for injuries sustained by persons due to ice and snow on sidewalks, where climatic conditions such as we have discussed are prevalent and where the presence and condition of the ice and snow are the result of natural causes. We do not pass upon situations where ice and snow conditions may be due to unnatural or artificial causes.[14]

Morrison adhered to Hale. In Morrison we held, in a pedestrian slip and fall case, that the city of Anchorage was "not negligent for not having taken remedial measures with respect to natural accumulations of ice and snow on its sidewalks." [15] In Ogden v. State,[16] the trial court found that Ogden was injured as a result of his own negligence when he slipped and fell on some ice at the Fairbanks International Airport. On appeal, the trial court's findings pertaining to Ogden's contributory negligence were affirmed. In regard to Ogden's contention that the trial court erred in holding that the state was not negligent in permitting the icy condition to exist, we said, "We need not decide this issue, for even if appellee were negligent appellant's contributory negligence would bar his recovery." [17]

We believe that the natural-unnatural accumulation standard of Hale and Morrison is inapplicable to the case at bar.[18]

---

9. Typical of the authorities relied on by Carr's for this position are Zide v. Jewel Tea Co., 39 Ill.App.2d 217, 188 N.E.2d 383 (1963); Crenshaw v. Firestone Tire & Rubber Co., 72 N.M. 84, 380 P.2d 828 (1963); Levine v. Hart Motors, 143 N.E.2d 602 (Ohio Ct.App.1955); Wise v. Great Atlantic & Pacific Tea Co., 94 Ohio App. 320, 115 N.E.2d 33 (1953).

> on it, and is injured. Her only alternative to taking the risk was to forgo her employment. A is subject to liability to C.

10. In support of this position, Carr's relies upon Crawford v. Soennichsen, 175 Neb. 87, 120 N.W.2d 578 (1963).

11. 395 P.2d 371 (Alaska 1964).

12. 390 P.2d 782 (Alaska 1964).

13. 389 P.2d 434 (Alaska 1964).

14. Id. at 437–438 (footnotes omitted).

15. 390 P.2d 782, 783 (Alaska 1964).

16. 395 P.2d 371 (Alaska 1964).

17. Id. at 372.

18. The parties have not cited Gunsolus v. City of Fairbanks, 391 P.2d 13 (Alaska 1964). There appellant slipped and fell on ice which had formed on a metal grating covering a municipal steam line located on a street intersection crosswalk in Fairbanks. A jury returned a verdict against appellant in her negligence suit. In regard to the issue of whether the city of Fairbanks acted to remedy a dangerous condition of ice and snow within a reasonable time, the trial court instructed the jury that they might consider:

> The cause and nature of the condition, the practical problem presented, and in general, the necessities and size of the effort; and in this regard you may consider the amount of snowfall in the period preceding plaintiff's fall, the temperature at that time, the equipment of the City used for snow removal

Unlike the business invitee-private possessor of land situation present in the case at bar, *Hale* and *Morrison* involved the duty of a municipality toward a licensee. In Hale v. City of Anchorage,[19] this court found that the city had no duty to clear icy, rutted sidewalks, because it could not possibly do so in time to avoid rough, uneven ridges, and because even the most diligent efforts would have left a smooth surface of ice more dangerous than the sidewalk's original condition. It is of no small significance that in the *Hale* case it was emphasized that:

> The City of Anchorage has 80 miles of paved sidewalks and about 178 miles of unpaved walks, and hundreds of curbcuts or driveways such as the one involved in this case. It would be an impossible task for the city to clean all of the sidewalks and curbcuts before pedestrian and vehicular traffic caused ice to form in rough and uneven ridges.[20]

Thus far the natural-unnatural accumulation of ice and snow rule has been limited to cases involving the duty owed by municipalities to licensees who, as a class, must take the condition of the land as the possessor himself uses it.[21] We decline to extend this rule to the business invitee-private possessor of land situation. Unlike the licensee, the invitee enters upon the possessor's land accompanied by an implied representation that "the land has been prepared and made ready and safe for his reception." [22] A business invitee may be entitled to the undertaking of affirmative steps by the possessor of land in order to promote the invitee's safety.[23] We discern

---

and ice control, the number of employees, the time devoted to snow and ice control, the amount of streets requiring this work and the size of the City in area and population.
*Supra* at 14.
This court held that the giving of this instruction was not error, citing our decision in *Hale.*

19. 389 P.2d 434, 437 (Alaska 1964).

20. Hale v. City of Anchorage, 389 P.2d 434, 437 (Alaska 1964).

21. In Restatement (Second) of Torts § 342, comment *f* (1965), it is stated in part that:
> A licensee, in whose visit the possessor has no interest, is not entitled to expect that special preparations will be made for his safety or that the possessor will warn him of conditions which are perceptible by his senses, or the existence of which can be inferred from facts within the licensee's knowledge.

22. In comment *b* of § 343, Restatement (Second) of Torts, the distinction between duties owed by the possessor of land to licensees and invitees is explained in the following manner:
> One who holds his land open for the reception of invitees is under a greater duty in respect to its physical condition than one who permits the visit of a mere licensee. The licensee enters with the understanding that he will take the land as the possessor himself uses it. Therefore such a licensee is entitled to expect only that he will be placed upon an equal footing with the possessor himself by an adequate disclosure of any dangerous conditions that are known to the possessor. On the other hand an invitee enters upon an implied representation or assurance that the land has been prepared and made ready and safe for his reception. He is therefore entitled to expect that the possessor will exercise reasonable care to make the land safe for his entry, or for his use for the purposes of the invitation. He is entitled to expect such care not only in the original construction of the premises, and any activities of the possessor or his employees which may affect their condition, but also in inspection to discover their actual condition and any latent defects, followed by such repair, safeguards, or warning as may be reasonably necessary for his protection under the circumstances.

23. Restatement (Second) of Torts § 343, comment *d* (1965), states that:
> An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein. Therefore an invitee is not required to be on the alert to discover defects which, if he were a mere licensee, entitled to expect nothing but notice of known defects, he might be negligent in not discovering * * *.

a significant distinction between the standard of care which is owed by municipalities in Alaska to licensees upon their streets and sidewalks, and that owed by private possessors of land, such as Carr's, to a business invitee. Alaska's climatic conditions do not metamorphize all risks arising from ice and snow conditions into reasonable risks for the business invitee. Nor are we persuaded by appellee Carr's policy argument that in Alaska it would result in unreasonable costs to the private-commercial possessor of land to require the possessor to clear ice and snow, or otherwise remedy conditions which amount to unreasonable risks of harm to its business invitees. The mere fact that snow and ice conditions prevail for many months throughout various locations in Alaska is not in and of itself sufficient rationale for the insulation of the possessor of land from liability to his business invitee. Nor do such climatic conditions negate the possibility that the possessor should have anticipated harm to the business invitee despite the latter's personal knowledge of the dangerous snow and ice conditions or the general obviousness of such conditions.[24]

What acts will constitute reasonable care on the part of the possessor of land will depend on the particular variables of each case. Our decision today does not represent the adoption of a flat requirement that the possessor's duty requires that he attempt to keep his land free of ice and snow.[25] Dependent on the circumstances, reasonable care on the possessor's part could be demonstrated by other reasonable acts such as the sanding of the area, or application of salt.[26]

One other aspect of this appeal should be mentioned. In Cummins v. King & Sons,[27] it was noted that, "We have held that mere knowledge of an icy condition before passing over it does not establish negligence." This was a reference to our previous decision in Hale v. City of Anchorage where it was said that:

> Mere knowledge of the icy condition before passing over it does not establish negligence. The test is whether appellant, knowing of the icy condition, reasonably believed, and had a right to believe that she could cross the area safely by the exercise of ordinary care. * * *[28]

In our opinion, the record does not afford a basis for concluding that Kremer was contributorily negligent as a matter of law. On this record, contributory negligence is a jury question.[29]

The judgment below is reversed and the cause remanded for new trial.

NESBETT, C. J., not participating.

24. Restatement (Second) of Torts § 343A (1965).

25. Compare Bates v. Valley Fair Enterprises, Inc., 86 N.J.Super. 1, 205 A.2d 746 (1964), where the court said:
The parking area was an integral portion of defendant's shopping center. As such, defendant owed to business invitees the duty of exercising reasonable care to maintain it in a reasonably safe condition. * * * As part of this general obligation, defendant was under a duty to exercise reasonable care to keep it free of ice and snow.

26. Compare Dawson v. Payless for Drugs, 248 Or. 334, 433 P.2d 1019, 1021 (1967) (footnotes omitted):
In several cases it has been held that the jury could find the owner of business premises was negligent in failing to eliminate snow and ice from a parking lot provided for its patrons even though the condition of the parking lot was known to the plaintiff. In our opinion these cases express the preferable view.
In support of the text, the Dawson court cited King Soopers, Inc. v. Mitchell, 140 Colo. 119, 342 P.2d 1006 (1959); Peterson v. W. T. Rawleigh Co., 274 Minn. 495, 144 N.W.2d 555 (1966); Morris v. Atlantic & Pacific Tea Co., 384 Pa. 464, 121 A.2d 135 (1956).

27. 453 P.2d 465, 467 (Alaska 1969).

28. 389 P.2d 434, 436 (Alaska 1964) (footnote omitted).

29. Contributory negligence has been defined as the "failure to exercise reasonable prudence for his own safety when he perceives danger to himself created by another's negligence." Saslow v. Rexford, 395 P.2d 36, 41 (Alaska 1964); Powell v. Alaska Marine Equip., Inc., 453 P.2d 407, 408 (Alaska 1969); Leavitt v. Gillaspie, 443 P.2d 61, 66 (Alaska 1968).