BARD v WEATHERVANE OF MICHIGAN

OPINION OF THE COURT

1. NEGLIGENCE—DUTY—INVITEE—ICE AND SNOW—BUSINESS PARKING LOTS.

   The duty owed by an operator of a business to a business invitee with respect to an icy, rutted condition of a business parking lot arising from traffic on natural accumulations of snow is to not increase these natural hazards or create a new hazard by any affirmative act.

DISSENT BY HOLBROOK, J.

2. NEGLIGENCE—DUTY—INVITEE—ICE AND SNOW—BUSINESS PARKING LOTS.

   *The basic tort rule that a landowner has a responsibility to exercise due care to keep his premises and access thereto in a safe condition for their use by business invitees should apply to a landowner's private parking lot made hazardous due to natural accumulations of ice and snow, especially where the dangers in walking on accumulations of ice and snow in the parking lot had been severely heightened due to icy ruts formed by automobile traffic in the lot of which the landowner had knowledge and control.*

Appeal from Ingham, Jack W. Warren, J. Submitted Division 2 November 16, 1973, at Lansing. (Docket No. 16549.) Decided January 17, 1974.

Complaint by Sharon Bard and Allen Bard against Weathervane of Michigan for damages for injuries sustained in a fall on snow and ice. Directed verdict and judgment for defendant. Plaintiffs appeal. Affirmed.

REFERENCE FOR POINTS IN HEADNOTES

[1, 2] 38 Am Jur 2d, Garages, and Parking and Filling Stations §§ 81–83, 85, 89, 92, 94–96.

*Abood, Abood & Abood, P. C.,* for plaintiffs.

*Foster, Lindemer, Swift & Collins,* for defendant.

Before: QUINN, P. J., and HOLBROOK and PETER-
SON,* JJ.

QUINN, P. J. January 27, 1972, plaintiffs drove to
defendant's shop in Okemos, Michigan, to pur-
chase a new pair of ski gloves for Mrs. Bard. They
parked their automobile in defendant's parking lot
as near to the shop entrance as was possible. The
parking lot was well lighted but it was icy and
rutted from prior accumulation of snow and traffic.
A light snow was falling on the evening in ques-
tion. These conditions were known to plaintiffs,
and because of this, Mrs. Bard walked slowly and
watched the ground as she proceeded to the shop
entrance. Approximately half way from the auto-
mobile to the entrance, she slipped and fell on the
ice, breaking her ankle.

This action based on the alleged negligence of
defendant in failing to maintain its parking lot in
a reasonably safe condition followed. At trial,
when plaintiffs rested, defendant's motion for di-
rected verdict was granted and plaintiffs appeal.

The controlling issue has not been accurately
stated by either party. We believe a precise state-
ment of that issue is: What duty does the operator
of a business owe to invitees of the business with
respect to the icy, rutted condition of the business
parking lot arising from traffic on natural accumu-
lation of snow?

Plaintiffs argue that the duty owed is properly
stated in *Kroll v Katz,* 374 Mich 364, 371; 132
NW2d 27, 30 (1965). We cannot accept this argu-
ment for two reasons. *Kroll* did not involve a slip

---

* Circuit judge, sitting on the Court of Appeals by assignment.

and fall on a natural accumulation of ice and snow. Secondly, *Kroll* states the basic duty of an invitor to an invitee which we find to be inapplicable to the case before us, which involves a hazard created by natural elements.

Snow falls on invitor, invitee, and all residents of the snow area alike. All are, or should be, aware of the hazards arising from natural accumulations of snow such as icy conditions and ruts from traffic. These are common wintertime hazards to all who live in areas where snow accumulates, and these hazards, without more, give rise to no duty owed by an invitor to an invitee.

Given the conditions that existed in this case, what was the duty that defendant owed to plaintiffs? It was to not increase these natural hazards or create a new hazard by any affirmative act, *Weider v Goldsmith,* 353 Mich 339; 91 NW2d 283 (1958). We find nothing in this record to indicate that defendant violated this duty.

The record discloses that Mrs. Bard was aware of the dangerous condition of defendant's parking lot and that she chose to use it. This obviates discussion of plaintiffs' claim that defendant owed a duty to warn plaintiffs of the dangerous condition.

Affirmed with costs to defendant.

PETERSON, J., concurred.

HOLBROOK, J. *(dissenting).* This writer agrees with Judge QUINN's statement of facts except in certain particulars. A jury trial was held on the cause described by my brother, but the trial judge granted defendant's motion for a directed verdict after Sharon Bard had testified, and after an offer of proof was made by plaintiffs' attorney on their behalf. Plaintiffs had not actually rested their

case, but only suspended it, all parties apparently agreeing that further elucidation of the facts would be irrelevant if they could not agree on the standard of due care owed to plaintiffs by the defendant. Thus, this writer cannot agree that the record irreversibly binds us to the conclusion that Mrs. Bard was aware of the dangerous condition of the defendant's parking lot. Although Mrs. Bard did testify that she thought the parking lot condition was dangerous, perhaps had plaintiffs completed their proofs they would have shown that the term "dangerous" was used in a relative sense in that all snow and icy parking lots are "dangerous" if one walks without due care. In any case, this writer does not agree with my brother that the record obviates discussion of plaintiffs' claim that defendant owed a duty to warn plaintiffs of the dangerous condition of the parking lot or that only a duty to warn was owed. Therefore, it is necessary to proceed to analyze the legal basis of the trial judge's directed verdict.

The trial judge granted defendant's motion for a directed verdict on the grounds that *Gillen v Martini,* 31 Mich App 685; 188 NW2d 43 (1971), maintains that no duty of due care is owed by the defendant to protect the plaintiffs against injury from the natural accumulation of ice and snow on defendant's parking lot. However, *Gillen,* as well as all other Michigan cases relevant on this point that defendant cites on appeal, concerned a fall on an icy *sidewalk.* See *Mayo v Village of Baraga,* 178 Mich 171; 144 NW 517 (1913); *McKellar v Detroit,* 57 Mich 158; 23 NW 621 (1885); *Rolf v Greenville,* 102 Mich 544; 61 NW 3 (1894); *Pringle v Detroit,* 152 Mich 445; 116 NW 362 (1908); *Jefferson v Sault Ste Marie,* 166 Mich 340; 130 NW 610 (1911); *Black v Manistee,* 107 Mich 60; 64 NW 868 (1895);

*Johnson v Pontiac,* 276 Mich 103; 267 NW 795 (1936). See, also, *Whinnen v 231 Corp,* 49 Mich App 371; 212 NW2d 297 (1973). But *cf. Jeswald v Hutt,* 15 Ohio St 2d 224; 239 NE2d 37 (1968); *Kalicki v Beacon Bowl, Inc,* 143 Ind App 132; 238 NE2d 673 (1968); *Luebeck v Safeway Stores, Inc,* 152 Mont 88; 446 P2d 921 (1968); *Osborn v Lamsdowne,* 28 Del Co 286 (Pa, 1938), which deny liability in parking lot situations. Moreover, the *Gillen* Court cited only non-parking-lot cases in support of its holding. See *Taylor v Lake Shore & M S R Co,* 45 Mich 74; 7 NW 728 (1881); *Grooms v Union Guardian Trust Co,* 309 Mich 437; 15 NW2d 698 (1944); *Levendoski v Geisenhaver,* 375 Mich 225; 134 NW2d 228 (1965); *Perl v Cohodas, Peterson, Paoli, Nast Co,* 295 Mich 325; 294 NW 697 (1940). From a purely factual standpoint then all of the legal authority placed before this Court and the trial judge by the defendant is distinguishable.

From a purely legal standpoint the *Gillen* case appears even weaker authority for the decision reached below. *Gillen* relied for its holding on *Perl, supra,* at 334–335; 294 NW at 701 quoting from *Perl* at 31 Mich App 687–688; 188 NW2d 44–45 as follows:

" 'Most of the cases involving ice and snow concern actions against municipalities for such accumulations on sidewalks. However, *the standard of duty of the municipality to those who use its streets and sidewalks is the same as that of the owner or occupier of premises to an invitee.*

" *In such cases the criterion is whether the danger was caused by natural or unnatural and artificial conditions.*' " (Emphasis in original.)

While this language from *Perl* would suggest that the owner or operator of a parking lot is not responsible to business invitees for the injuries

caused by the natural accumulation of ice and snow, *Perl* concerned a fall on icy *steps,* not on a sidewalk. Furthermore, the *Perl* Court, after stating what was quoted above in *Gillen,* asserted at 295 Mich 335; 294 NW 701:

"The foregoing observations and authorities are referred to only by way of analogy. We are not here concerned with the question of liability of a municipality for injuries resulting from the formation of ice on its streets."

The Court in *Perl* also quoted approvingly from *Great Atlantic & Pacific Tea Co v McLravy,* 71 F2d 396, 397 (CA 6, 1934):

" 'It is unquestionably the law that a storekeeper owes to his customers the duty of exercising reasonable care to keep his premises and access thereto in a safe condition for their use, and upon the evidence we do not think that appellant was entitled to a directed verdict upon either of the grounds urged.' "

Thus, it is clear that the *Perl* case is not authority for the *Gillen* holding, but rather is authority for the proposition that a landowner has the responsibility to exercise due care to keep his premises and access thereto in a safe condition for their use by business invitees. This proposition is not, of course, a new one. It has been phrased as a basic tort rule one way or another by most tort law authorities. See, *e.g.,* 2 Restatement Torts, 2d, § 343, p 215; Prosser, Torts (3d ed), § 64, p 394 *et seq.;* 2 Harper & James, Law of Torts, §§ 27.12–27.14, pp 1478–1505.

The *Gillen* Court apparently felt that it was bound by the long line of icy sidewalk cases cited above. The apparent rationale behind these cases was that the duty to maintain public streets and

sidewalks is a municipal obligation and that ordinances transferring that duty to private owners created no private liability. See *Levendoski, supra,* at 227; 134 NW2d at 229. Even conceding the continuing validity of that rationale, this writer does not see how it applies where private property, including private sidewalks, is concerned, and thus believes *Gillen* deserves rejection for this reason.

Hence, this writer would hold that the trial judge erred in relying on *Gillen* in his decision below. Added support for this ruling can be found in a number of Michigan cases where the owner or operator of a parking lot was held subject to liability for personal injuries to business invitees due to the natural or artificial conditions in the lot. See *Goodman v Theatre Parking, Inc,* 286 Mich 80; 281 NW 545 (1938); *Dora v Kroger Co,* 1 Mich App 286; 136 NW2d 47 (1965); *Siegel v Detroit Ice & Fuel Co,* 324 Mich 205; 36 NW2d 719 (1949); *Girard v Auto Specialities Athletic Assn,* 300 Mich 272; 1 NW2d 538 (1942). *Cf. Cohran v Monroe Randolph Parking, Inc,* 3 Mich App 719; 143 NW2d 599 (1966). While none of these cases were concerned with falls solely due to icy conditions, they all stand for the proposition enunciated in *Perl, supra, i.e.,* that owners or operators of business premises and access thereto owe a duty of due care to business invitees who might be injured due to the natural or artificial conditions of the same. See, also, *Elliott v Dahl,* 299 Mich 380; 300 NW 132 (1941); *Dora, supra;* and 38 ALR3d 10. For an out-of-state case almost factually identical to this case and holding as this writer would, see *Kremer v Carr's Food Center, Inc,* 462 P2d 747 (Alas, 1969).

The courts of this state have already held that a landowner may be liable where injuries are sus-

tained either in the vestibule of a building, *Keech v Clements,* 303 Mich 69; 5 NW2d 570 (1942), or on a sloping terrazzo walkway leading from the store to a public sidewalk, *DeSmit v J C Penney Co,* 369 Mich 527; 120 NW2d 223 (1963). In light of these cases it would be improper to draw the liability line at parking lots simply because ice and snow were the cause of the injury, even though the landowner might have been grossly negligent in failing to clean his parking lot. In reaching this conclusion this writer is not unmindful of the often expressed fears that a multitude of unwarranted suits will arise if landowners are held responsible for injuries to business invitees due to natural accumulations of ice and snow or that businesses will be unduly expensed if they have a duty to clear away ice and snow. However, the doctrine of contributory negligence is the landowner's strong weapon against such possible suits. The Alaskan Supreme Court in *Kremer, supra,* at 462 P2d 752 amply answers the expressed fears about the rule:

"Alaska's climatic conditions do not metamorphize all risks arising from ice and snow conditions into reasonable risks for the business invitee. Nor are we persuaded by appellee Carr's policy argument that in Alaska it would result in unreasonable costs to the private-commercial possessor of land to require the possessor to clear ice and snow, or otherwise remedy conditions which amount to unreasonable risks of harm to its business invitees. The mere fact that snow and ice conditions prevail for many months throughout various locations in Alaska is not in and of itself sufficient rationale for the insulation of the possessor of land from liability to his business invitee. Nor do such climatic conditions negate the possibility that the possessor should have anticipated harm to the business invitee despite the latter's personal knowledge of the

dangerous snow and ice conditions or the general obviousness of such conditions.

"What acts will constitute reasonable care on the part of the possessor of land will depend on the particular variables of each case. Our decision today does not represent the adoption of a flat requirement that the possessor's duty requires that he attempt to keep his land free of ice and snow. *Dependent on the circumstances, reasonable care on the possessor's part could be demonstrated by other reasonable acts such as the sanding of the area, or application of salt.*" (Emphasis supplied.)

This writer believes negligence law has a wide enough umbrella to cover victims of the negligence of an owner or operator of a parking lot just as it covers victims of negligence inside buildings. This is especially true here where the dangers of walking on accumulations of ice and snow in defendant's parking lot had been severely heightened due to icy ruts formed by automobile traffic in the lot of which the defendant had knowledge and control. As the trial judge tersely asked, "What is so holy about the inside of a building as contrasted to the outside?" This case should be reversed and remanded for a new trial.