JOHNSON v. CITY OF MARQUETTE.

1. HIGHWAYS AND STREETS—DEFECTIVE HIGHWAYS—INJURIES TO TRAVELERS—ACTIONS—PLEADING—VARIANCE.

In an action against a city for wrongful death caused by a runaway team, a declaration counting upon the team being frightened at a defective railway crossing is not variant from proof that they were frightened by noise at a furnace before they came to the crossing, where it appears that they were also frightened at the crossing and that the previous fright had not resulted in the driver losing control of them in such sense as to make their previous fright the proximate cause of the injury.[1]

---

[1] As to effect upon right of recovery, of fact that horse was frightened when accident occurred on defective highway, see note to *Schaeffer* v. *Jackson Township* (Pa.), 18 L. R. A. 100, and note to *City of Denver* v. *Utzler* (Colo.), 8 L. R. A. (N. S.) 77.

2. SAME — SNOW AND ICE — UNNATURAL ACCUMULATION — NEGLI-
GENCE—QUESTION FOR JURY.

> Whether an unnatural accumulation of snow and ice at a
> railroad crossing, occasioned by shoveling from the railroad
> track so as to produce a hump on either side of the track, was
> an actionable defect in the highway for which the city was
> liable, *held*, under the evidence, to be a question for the jury.

3. SAME—RUNAWAY TEAM—CONTROL OF DRIVER.

> A horse that merely shies or starts and for a moment has his
> own way is not for that reason to be considered beyond con-
> trol.

4. SAME—DEFECTIVE HIGHWAY—FRIGHTENED HORSES—PROXIMATE
CAUSE OF INJURY.

> Whether the proximate cause of an injury inflicted by a run-
> away team was a defect in the highway which increased
> their fright and caused their driver to lose entire control of
> them, or a previous fright caused by the noise of a furnace
> near the highway, *held*, under the evidence, to be a question
> for the jury.

Error to Marquette; Stone, J. Submitted May 12,
1908. (Docket No. 1.) Decided September 10, 1908.

Case by Laughlin Johnson, administrator of the estate
of Margaret M. Johnson, deceased, against the city of
Marquette for the negligent killing of plaintiff's intestate.
There was judgment for plaintiff, and defendant brings
error. Affirmed.

*George P. Brown* ( *William P. Belden*, of counsel),
for appellant.

*C. F. Button* (*S. W. Shaull*, of counsel), for appellee.

MONTGOMERY, J. The plaintiff's intestate, while driv-
ing in a cutter in a street in defendant city, was overtaken
by a team which had escaped from its driver, Herman
Prebe, and, admittedly without fault or negligence on her
part, was trampled upon and mortally injured. This ac-
tion was brought to recover damages from the city, upon
the claim that the cause of the fright to the team which
resulted in the loss of control by the driver was a defective

condition in the highway. The annexed plat will show
the condition of the street. The crossing of the highway
in question over the switch of the Marquette & South-
eastern Railway is indicated. The injury to the deceased
occurred at a point some 350 feet north of this crossing.
A team drawing a sleigh conveying upon it a load of
wood and driven by Herman Prebe was approaching this
crossing from the south, and while upon the bridge, at a
point some 200 feet or less from the crossing, an unusual
noise at the Carp furnace startled the team, they com-
mencing to dance, and the driver was not able to bring
them down to a walk until the crossing of the railway by

the highway was reached. At this point he was thrown
from the sleigh and lost control of the team. The evi-
dence tended to show that an unusual and unnatural ac-
cumulation of snow had been formed at this point by
shoveling from the railroad tracks onto the highway, at
either side and into the traveled part thereof, snow which
had formed a very steep embankment, the exact depth of
which is not shown, but which was obviously a dangerous
embankment. The jury awarded a verdict to the plain-
tiff, and the defendant brings error. The errors relied
upon are a variance between the case made and the case
attempted to be made by the proofs; that the defect in
the highway, if there was any defect, was not the proxi-
mate cause of the death of Mrs. Johnson, it being con-

tended that the proximate cause was the fright of the horses occasioned by the steam escaping from the furnace, and the negligence of the driver, Herman Prebe, in the manner in which he was driving the horses and the manner in which he stood on the sleigh, and his failure to equip his horses with sleigh bells.

The question of whether there was a variance between the declaration and the proofs is so closely connected with that of whether the condition of the highway was the proximate cause of the injury, that the discussion of one necessarily involves a determination of the other.   It is contended that the declaration counts upon the team being frightened at the railway crossing; whereas, it is said, they were frightened at the furnace.   But if there was additional fright at the crossing, and if it should be determined that the previous fright had not resulted in the driver losing control of the team in such sense as to make their previous fright the proximate cause of the injury, we see no fault in alleging the fright which was the occasion of the injury as occurring at the railway crossing.

It is next contended that there was no negligence proven against the city of Marquette.   This point was not very strongly pressed at the hearing.   We do not think it open to serious question that there was evidence in this case that at this crossing there was an unnatural accumulation of snow and ice, occasioned by shoveling from the railroad track, so as to produce a hump on either side of the track of several inches in depth; thus increasing the height of the bank on either side.   We think it was at least a question for the jury as to whether this left the highway in a condition reasonably safe and fit for travel.   It is true that the natural accumulations of snow and ice and the natural results of traveling on the same do not of themselves make a case of faulty highway which justifies a jury in finding a municipality in fault.   But that is not this case, as the evidence was ample to show that snow was thrown and piled on this highway in such a manner as to

make an unnatural hump or ridge on either side of the track.

Whether this condition of the highway was the proximate cause of the injury, presents the principal question in the case. The circuit judge left this question to the jury under instructions, the language of which is not complained of. It is contended, however, that there were no facts which warranted the submission of this question to the jury. The testimony upon this point was given by Herman Prebe, and was as follows:

"*A.* Well, I came along with my cord of wood, and coming onto the Carp bridge the horses, they were going, driving along gently and slowly. The horses were young, and gay, and dancing, and coming towards this end of the Carp bridge, right in front of the furnace, the horses got a little uneasy from the noise of the furnace. They were making some noise in the furnace. They seemed to take a stronger hold on the lines than what they had; and I was standing with my feet braced on the rack behind and holding my lines in my hands, trying to hold the horses down to a walk, and that is what I couldn't do, the few steps from the furnace onto this crossing.

"*Q.* How fast were they going?

"*A.* They were jumping up and down some; not drawing, but jumping up and down.

"*Q.* Sort of dancing, as horses will when they are excited?

"*A.* Yes; they were dancing up and down, and me standing there then holding them in. I wanted to slow them down to a walk, and they wouldn't walk them few steps. I didn't get them to walk; and, coming onto this track, I got throwed off. *   *   *

"*Q.* How did you come to fall off the sleigh? You say you were standing there braced, holding them in with the lines. How did you come to fall off?

"*A.* Because the team was going on a little trot, and by this drop, and me falling off as soon as they got onto the track—

"*The Court:* What threw you off?

"*A.* Well; the drop of the track. *   *   * My lines dropped out of my hands after I fell; not before. I don't remember them dropping out of my hands at all. They were in my hands when I started to fall. I did not let go

of them before I fell. I have driven horses 10 or 15 years, and had had considerable experience in driving during that time. I am a farmer, and use horses in my business and haul wood to town more or less in the winter. I was driving that day in my usual manner. I was standing in the back of the box braced against the hind dashboard. I was not between the pile of wood and the dashboard. I was standing on the end of the bottom boards which stick out behind the dashboard. The sides of the box which come up one or two feet high also extend back beyond the hind end board. I didn't think to brace against the sides. I stood behind, and had my knees against the end board and had the lines in my hands. I should think according to my experience I could handle the team as well there as if I were sitting on the load. I should judge the drop from the traveled part of the highway to the track would be from 18 inches to 2 feet. I could not tell whether the snow was packed down hard or not. I did not look at that. * * * When my horses ran away and threw me off at the crossing, they took the load of wood along with them; and, when I regained consciousness, it was standing in front of Rustenhoven's saloon. I came into town afterwards with a load of wood. The wood was not spilled out at the crossing. I have had that team two years. It is a young team. They were not frightened at the furnace, but it is a young team, and always a little gay and dancing. They did not run away or anything like that. The noise of the furnace never affected my horses on any previous occasion so much as then. They had noticed the furnace before, but it is not every time the same noise came out of the furnace that it was then. I can't remember of ever coming along there when there was such a noise that set the horses to dancing. This team ran away from me at home before this occasion. * * *

"*Q.* Were you doing all you could to stop your horses when they went into this crossing?

"*A.* Yes, sir.

"*Q.* You are sure about that?

"*A.* Yes, sir.

"*Q.* Couldn't you get them down to a walk before you got there?

"*A.* No.

"*Q.* Do you say the furnace scared your team?

"*A*. Yes, sir; that is where they got their hold on the lines.

"*Q*. Was it steam?

"*A*. I couldn't say; but it was a whistling noise from the furnace. What whistling they done or what they done I don't know. They first commenced to dance when I was on the bridge.

"*Q*. Did you have the crossing in mind when you were trying to hold the horses down?

"*A*. Yes, sir.

"*Q*. But you say they were jumping so you couldn't get them down?

"*A*. I couldn't get them down to a walk getting onto the track."

We have quoted this testimony at considerable length, as it bears upon the controlling question in the case. It must be conceded that, under our decisions, if it could be said that Prebe lost control of his horses and they were in fact running away and beyond control at the time they reached this crossing, the condition of the highway at that point could not be said to be the proximate cause of the injury. But we think the case should properly fall within the line of cases of which *Langworthy* v. *Township of Green*, 95 Mich. 93, is the leading case, in which it is held that a horse is not to be considered beyond control that merely shies or starts and for a moment has his own way. This case was followed in *Gage* v. *Railroad Co.*, 105 Mich. 335, and has been recognized in numerous decisions, including the case of *Bleil* v. *Railway Co.*, 98 Mich. 228, relied upon by counsel for plaintiff. We think it was open to the jury to say that, except for the condition of this highway, the driver had sufficient control of his team so that no serious consequences could have followed. It is true he was not able to bring them down to a walk in this short distance of less than 200 feet; but that absolute control of horses may be temporarily lost by the driver is an incident to travel upon the highway which public authorities are reasonably bound to take notice of. Such a movement of a team as would not be uncommon is not necessarily a loss of control within the meaning of the

authorities. See, on this point, Wharton on Negligence (2d Ed.), § 103; *Olson* v. *City of Chippewa Falls*, 71 Wis. 558; *Simons* v. *Township of Casco*, 105 Mich. 588. We think the facts are such as to justify the submission of this question to the jury.

Under the heading, "City Not Responsible for Consequential Damages," it is contended that the city is not responsible for Prebe's horses being frightened by the furnace company, and the city and Prebe are not joint wrongdoers. The question of whether there is sufficient causal connection between the defective highway and the injuries to the plaintiff's intestate to justify the court in submitting this case to the jury has been sufficiently discussed in dealing with the question of proximate cause. If it is open to the jury to find that the driver would not have lost the control of the team but for the defect in the highway, then the connection between the wrong and the injury is sufficient to justify a recovery.

We discover no error in the rulings in the admission of testimony, and think there was a case for the jury.

The judgment is affirmed.

GRANT, C. J., and BLAIR, OSTRANDER, and HOOKER, JJ., concurred.