# Order

Michigan Supreme Court
Lansing, Michigan

April 25, 2008

133772

ESTATE OF CHANTELL BUCKNER, by its
Personal Representative, RICHARD RASHID,
and LAQUATA WRIGHT, Minor, by her
Conservator, MICHAEL J. PANEK,
    Plaintiffs-Appellees,
    Cross-Appellants,

v

CITY OF LANSING,
    Defendant-Appellant,
    Cross-Appellee,
and

ESTATE OF LUTHER WAMPLER, by its
Personal Representative, PAMELA WAMPLER,
    Defendant, Cross-Plaintiff-Appellee,
    Cross-Appellee,
and

MARTHA WAMPLER,
    Defendant, Cross-Plaintiff,
and

MORLEY S. OATES POST 701 VETERANS OF
FOREIGN WARS OF THE UNITED STATES,
    Defendant, Cross-Defendant-Appellee,
    Cross-Appellee.
_____

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

SC: 133772
COA: 270455
Ingham CC: 05-001467-NI

On order of the Court, leave to appeal having been granted and the briefs and oral argument of the parties having been considered by the Court, we REVERSE in part the March 15, 2007 judgment of the Court of Appeals. MCR 7.302(G)(1). Under the doctrine of governmental immunity, MCL 691.1401 *et seq.*, governmental agencies are entitled to immunity "for *all* tort liability whenever they are engaged in the exercise or discharge of a governmental function." *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 156 (2000) (emphasis in original). However, the Legislature has provided six specific exceptions to this general immunity; at issue here is the highway exception to immunity, MCL 691.1402(1). A governmental agency with jurisdiction over a highway

has the duty to "maintain the highway in reasonable repair."  MCL 691.1402(1); *Nawrocki*, *supra* at 160.  The term "highway" includes "sidewalks."  MCL 691.1401(e). In order to show that a governmental agency failed to "maintain [a] highway in reasonable repair," a plaintiff must demonstrate that a "defect" exists in the highway. *Nawrocki*, *supra* at 158; *Haliw v City of Sterling Hts*, 464 Mich 297, 309 n 9 (2001). Because the accumulation, by itself, of ice and snow on a sidewalk, regardless of whether it accumulated through natural causes or otherwise, does not constitute a "defect" in the sidewalk, plaintiffs have not shown that defendant violated its duty to "maintain" the sidewalk "in reasonable repair."  Thus, there is no need for this Court to address the issue of proximate causation.  Accordingly, MCL 691.1402(1) bars plaintiffs' suit.  We REMAND this case to the Ingham Circuit Court for entry of an order granting defendant's motion for summary disposition and for further proceedings not inconsistent with this order.

MARKMAN, J. concurs and states as follows:

I concur with the order.  I write separately only to respond to several arguments in Justice Weaver's dissent, which have the potential to mislead future litigants and which seek to replace the policy determinations of the Legislature, as explained in *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143 (2000), with those of Justice Weaver.

The central proposition of Justice Weaver's dissent is that, under MCL 691.1402(1), municipalities have a "statutory duty to maintain [a] highway 'in reasonable repair and in a condition reasonably safe and fit for travel.'"  *Post* at 4.  However, *Nawrocki* (a decision in which Justice Weaver joined) quite clearly explains that the duty established under the first sentence of MCL 691.1402(1) is limited to keeping the highway "in reasonable repair":

> The first sentence of the statutory clause, crucial in determining the scope of the highway exception, describes the basic duty imposed on all governmental agencies, including the state, having jurisdiction over any highway: "[to] maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel."  This sentence establishes the duty to keep the highway in reasonable repair.  The phrase "so that it is reasonably safe and convenient for public travel" refers to the duty to maintain and repair.  The plain language of this phrase thus states the desired outcome of reasonably repairing and maintaining the highway; it does not establish a second duty to keep the highway "reasonably safe." [*Nawrocki*, *supra* at 160.]

*Nawrocki* thus clearly asserts that the duty of a municipality under MCL 691.1402(1) is limited to maintaining highways in "reasonable repair."[1]

Justice Weaver's dissent then goes to extraordinary lengths to distinguish *Haliw v Sterling Hts*, 464 Mich 297 (2001), noting that *Haliw* involved a natural accumulation of snow, unlike the instant case.[2] However, the only relevant consideration for deciding the instant case is that a municipality's duty is limited to "maintaining the [sidewalk] in reasonable repair," and under that language plaintiff must show some defect in the sidewalk. The fact that *Haliw* involved a natural accumulation of snow, and the instant case does not, is utterly irrelevant and beside the point.

After distinguishing *Haliw* on the facts, Justice Weaver's dissent then relies on several cases to support its contention that a plaintiff may recover for an injury that arises from an unnatural accumulation of ice and snow. What Justice Weaver's dissent fails to acknowledge is that two of these cases — *Kowalczyk v Bailey*, 379 Mich 568 (1967), and *Johnson v City of Marquette*, 154 Mich 50 (1908) — did not involve the application of the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, which was enacted in 1964. Although the third case cited by the dissent, *Hampton v Master Products, Inc*, 84 Mich App 767 (1978), did refer to the GTLA, *Hampton* relied on *Kowalczyk*, a pre-GTLA case, to conclude that an unnatural accumulation could permit recovery. Accordingly, Justice Weaver's reliance on these cases is misplaced because all of them have been superseded with the 1964 enactment of the GTLA, which was the subject of thorough interpretation in *Nawrocki*.

Justice Weaver's dissent rightly notes that the facts of this case are extremely tragic. However, the question before this Court is not how to ensure that plaintiffs obtain a recovery; rather, we must determine whether, under the laws of our state, a recovery has been authorized against a municipality under the present circumstances. For under our laws, "[i]t is well settled" that a municipality is generally "immune from tort liability while engaging in a governmental function unless an exception [in the GTLA] applies."

---

[1] *Nawrocki* further clarified a municipality's duty: "'The duty to repair would generally limit the government's liability to cases in which there are defects.'" *Nawrocki*, *supra* at 177 n 32 (citation omitted). This Court has repeatedly equated the duty to "repair" with a duty to fix "defects." *Nawrocki*, *supra* at 158; *Haliw v Sterling Hts,* 464 Mich 297, 309 n 9 (2001); see also *Teufel v Watkins*, 267 Mich App 425, 429 n 1 (2005) ("The plain meaning of 'reasonable repair' as used in MCL 554.139(1)(b) requires repair of a defect in the premises. Accumulation of snow and ice is not a defect in the premises.").

[2] Justice Weaver's dissent also expends a great deal of effort distinguishing *MacLachlan v Capital Area Transp Auth*, 474 Mich 1059 (2006). Given that the majority's order never cites *MacLachlan*, I am unsure why Justice Weaver believes it necessary to do so. The order is a simple and straightforward application of *Nawrocki*.

*Haliw*, *supra* at 302; see also MCL 691.1407(1). Consequently, to conclude that defendant is not liable for damages under the GTLA is, as in every other such case, not the equivalent of this Court lauding defendant's performance of its municipal responsibilities or approving its sense of public priorities.

To reach its result, Justice Weaver's dissent transforms *Nawrocki*, irrelevantly distinguishes *Haliw*, and relies upon opinions long since superseded by new statutes. Most significantly, it accords unnatural meanings to the words of the law. Although I too have harbored concerns about the impact of our state's governmental immunity law, see, e.g., *Reid v Detroit*, 474 Mich 1116 (2006); *Ewing v Detroit*, 468 Mich 886 (2003), any solution must lie in legislative amendment, not in the revision of statutory law by this Court.

CAVANAGH, J., dissents and states as follows:

I would affirm the rulings of the trial court and the Court of Appeals that denied summary disposition for defendant city of Lansing. I also concur with part III(C) of Justice Weaver's dissenting statement.

WEAVER, J., dissents and states as follows:

I dissent from the order reversing the Court of Appeals judgment affirming the trial court's denial of summary disposition for the defendant, the city of Lansing. Because both lower courts properly concluded that a question of fact exists regarding whether the city created an unnatural accumulation of snow and ice, the plaintiffs should be permitted to present that question of fact to a jury.

The majority of four (Chief Justice Taylor, and Justices Corrigan, Young, and Markman) has now decided that, despite the statutory mandate requiring governmental entities to maintain highways (including sidewalks) in reasonable repair and in a condition reasonably safe and fit for travel, the city's creation of an unnatural accumulation of snow and ice "does not constitute a 'defect' in the sidewalk" and therefore, the plaintiffs have failed to establish that the city violated its duty to maintain the sidewalk in reasonable repair. However, while the majority does not view an unnatural accumulation of snow and ice to be a "structural defect," the statutory duty to maintain a highway "in reasonable repair and in a condition reasonably safe and fit for travel" is not limited to a duty to repair "structural defects." Because both the statute and prior cases interpreting the duty to repair a highway indicate that an *unnatural accumulation* of snow and ice is a "defect" that a governmental entity has an obligation to address given its duty to maintain the sidewalk in reasonable repair and in a condition reasonably safe and fit for travel, and because a question of fact exists regarding whether the city created an unnatural accumulation of snow and ice, I dissent and would affirm

the judgment of the Court of Appeals affirming the circuit court's denial of the city's motion for summary disposition.

Further, the majority of four's completely incorrect extension of *Nawrocki v Macomb Co Rd Comm*[3] by a one-page order, instead of by a full opinion, appears to be an attempt by the majority to conceal its latest example of judicial activism by unrestrained statutory interpretation.

## I. FACTS

On January 29, 2005, at approximately 6:45 p.m., Chantell Buckner (then age seven), Lanecia Wright (then age 14), and LaQuata Wright (then age 13) were walking from their home on Saginaw Street to a nearby McDonald's Restaurant located at the north corner of Saginaw and Larch streets.[4] The three girls had been walking on the sidewalk on the north side of Saginaw Street, in a westbound direction facing oncoming traffic. However, when they reached the intersection of Saginaw and Prudden streets, the sidewalk became impassable because of a large, unnatural accumulation of snow and ice that had been plowed off Saginaw Street and piled onto the sidewalk by the city of Lansing.

The city of Lansing's public service department had a policy of not clearing the north sidewalk along Saginaw Street to discourage pedestrians from walking on the north sidewalk.[5]

When the north sidewalk of Saginaw Street became impassable because of the snow and ice piled onto it, the girls decided to walk in the roadway along the north curb of Saginaw Street. As the girls walked alongside the curb, a car headed east toward the

---

[3] *Nawrocki v Macomb Co Rd Comm,* 463 Mich 143 (2000).

[4] By January 29, 2005, the city had received approximately 26.5 inches of snow since January 1, 2005. The average temperature for the two weeks before January 29 was below freezing. The largest snowfall occurred one week before the accident at issue here when, on January 22, the city received 12.6 inches of snow in one day.

[5] During a February 3, 2005, Lansing City Council meeting, a city employee of the public service department stated that the "sidewalk gets plowed occasionally but there is discretion given to the employee, but the general practice during heavy snow fall is to only plow the South side of that particular road." See also *Sidewalk Near Site of Fatality to Close,* Lansing State Journal, Feb. 1, 2005, at 1A and *City Considers Extending Sidewalk Near Hit-and-Run,* Lansing State Journal, Feb. 11, 2005, at 1A.

girls struck Chantell Buckner and LaQuata Wright.  Both girls suffered massive injuries, and Chantell died as a result of her injuries.[6]

After the accident, it became evident that the city's decision not to clear the sidewalk likely stemmed from the fact that the sidewalk itself, irrespective of snow and ice, was defective in that it had never been completed after a construction project in 1998. When the city constructed Prudden Street in 1998, it damaged the existing sidewalk along Saginaw Street such that the north sidewalk of Saginaw between Prudden and Larch streets was defective.[7]  This portion of the sidewalk (where the snow was piled up so as to make it impassable for the girls) remained in disrepair until after January 2005, i.e., after the accident.

The plaintiffs' original complaint against the city alleged failure to maintain, clear, shovel, or remove the unnatural accumulation of snow and ice from the north sidewalk. Essentially, the plaintiffs alleged that the city was liable under the highway exception to governmental immunity for injuries that resulted because of the city's failure to clear the unnatural accumulation of snow and ice from the north sidewalk of Saginaw Street.[8]

---

[6] The car's driver was defendant Luther Wampler (now deceased), who was allegedly intoxicated at the time his car collided with the girls.  He was subsequently charged with operating a vehicle while intoxicated, MCL 257.625, and failing to stop at the scene of an accident, MCL 257.618.

[7] A city employee admitted that it had been an unwritten policy of the city not to plow the north sidewalk for over 20 years. Thus, apparently even before the Prudden Street installation, the city had not plowed the area in question.

[8] MCL 691.1402(1) provides in pertinent part:

> Except as otherwise provided in section 2a, each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel.  A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency.

MCL 691.1401 defines "governmental agency" and "highway" as:

> (d) "Governmental agency" means the state or a political subdivision.  [A city is a political subdivision.]

> (e) "Highway" means a public highway, road, or street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and

The city subsequently brought a motion for summary disposition asserting that under the law of *natural* accumulations, an actual defect in the sidewalk surface must exist.[9] The plaintiffs then filed an amended complaint alleging that the sidewalk underneath the snow and ice was itself defective and that this defect caused the girls' injuries or death. The city also filed a motion for summary disposition with regard to the plaintiffs' amended complaint.

The circuit court denied both of the city's motions for summary disposition, stating with respect to the first complaint:

> Plaintiff's contention is that there was an unnatural accumulation that occurred and the unnatural accumulation doctrine is still good law and distinguishes itself from the *MacLachlan*[10] case and the Court concurs. I was affirmed, so that I know the case. I know it well. I do believe that doctrine is still good law. The unnatural accumulation was not argued in front of the Court of Appeals or the Supreme Court, which clearly makes the facts in the Court's opinion distinguishable. Therefore, based on the oral argument and the Plaintiff's response, Defendant's Motion is denied.

The city appealed, and the Court of Appeals affirmed the circuit court's denial of the city's motion for summary disposition with respect to the plaintiffs' first complaint on the basis that the "City could be found liable for creating an unnatural accumulation of snow that caused the accident, notwithstanding the provisions of the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*"[11]

The city again appealed, and the plaintiffs filed a cross-appeal. This Court granted leave and requested that the parties consider

> (1) whether the children's decision to risk walking in the street prevents the plaintiffs from establishing proximate causation; (2) whether the city of Lansing is entitled to governmental immunity because the

---

culverts on the highway. The term highway does not include alleys, trees, and utility poles.

[9] *Haliw v Sterling Hts,* 464 Mich 297 (2001).

[10] *MacLachlan v Capital Area Transportation Auth,* 474 Mich 1059 (2006).

[11] *Estate of Buckner v City of Lansing,* 274 Mich App 672, 673 (2007). The Court of Appeals reversed the circuit court's denial of the city's motion for summary disposition with regard to the second complaint on the basis that "plaintiffs came forward with insufficient evidence to establish a genuine issue of fact regarding whether the alleged defect in the city's sidewalk proximately caused the accident at issue." *Id.*

injuries did not occur on the sidewalk that the city allegedly failed to maintain, i.e., the injuries were not the direct result of the allegedly unmaintained condition; and (3) whether the statutory duty to "maintain the highway in reasonable repair," MCL 691.1402(1), imposes obligations relating only to structural-type defects, or whether it includes a duty not to place temporary obstacles on a highway that render it impassable. [*Buckner Estate v City of Lansing,* 480 Mich 895 (2007).]

## II. STANDARD OF REVIEW

This Court reviews the applicability of the governmental immunity statute, a question of law, de novo.[12] An appellate court also reviews de novo a lower court's grant or denial of a motion for summary disposition.[13]

## III. ANALYSIS

The governmental tort liability act (GTLA)[14] "provides broad immunity from tort liability to governmental agencies whenever they are engaged in the exercise or discharge of a governmental function."[15] The city of Lansing is a governmental agency that is immune from tort liability for its negligence while engaged in a governmental activity, unless one of the five statutory exceptions to governmental immunity applies.[16] The exception at issue here is the highway exception, MCL 691.1402:

(1) Except as otherwise provided in section 2a, each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency. . . . The duty of the state and the county road commissions to repair and maintain highways, and the liability for that

---

[12] *Ostroth v Warren Regency GP, LLC*, 474 Mich 36, 40(2006).

[13] *Cowles v Bank West,* 476 Mich 1, 13 (2006).

[14] MCL 691.1401 *et seq.*

[15] *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 595 (1984).

[16] The five statutory exceptions are: (1) the highway exception, MCL 691.1402; (2) the motor-vehicle exception, MCL 691.1405; (3) the public-building exception, MCL 691.1406; (4) the proprietary-function exception, MCL 691.1413; and (5) the governmental-hospital exception, MCL 691.1407(4).

duty, extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, trailways, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel. . . .

MCL 691.1401 defines "governmental agency" and "highway" as:

> (d) "Governmental agency" means the state or a political subdivision.
>
> (e) "Highway" means a public highway, road, or street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and culverts on the highway. The term highway does not include alleys, trees, and utility poles.

Inserting the definitions into § 1402, the highway exception to governmental immunity provides: "Each governmental agency [which includes cities] having jurisdiction over a highway [which includes sidewalks] shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who sustains bodily injury . . . by reason of failure of a governmental agency to keep a highway . . . in reasonable repair and in a condition reasonably safe and fit for travel may recover . . . damages." Pared down even further for purposes of this case, the plaintiffs' position is that pursuant to MCL 691.1402, the city, having jurisdiction over the sidewalk in question, has a duty to "maintain the [sidewalk] in reasonable repair so that it is reasonably safe and convenient for public travel." Further, the personal injuries sustained by the girls in this case occurred "by reason of failure of [the city]" "to keep [the sidewalk] in reasonable repair and in a condition reasonably safe and fit for public travel."

A. *Nawrocki Only Concerns Defects in "the improved portion of the highway designed for vehicular travel."*

In *Nawrocki*, this Court was only concerned with an injury that occurred on an improved portion of the highway. This Court did not address a city's duty to maintain sidewalks "in reasonable repair and in a condition reasonably safe and fit for travel."[17]

---

[17] MCL 691.1402(1).

Justice Markman insists, *ante* at 2, that our decision in *Nawrocki* limited the duty to keep a highway "in reasonable repair so that it is reasonably safe and convenient for public travel" only to keep a highway that is designed for vehicular travel "in reasonable repair." That statement is correct, and I joined the majority's decision in that respect. However, the discussion of duty in *Nawrocki* was limited to the facts presented in that case, which specifically concerned an injury sustained as a result of a *county's failure to maintain a highway designed for vehicular travel.*

The plaintiff, Rachel Nawrocki, after getting out of a truck from the passenger side and walking to the end of the truck to step off the curb and onto the street, seriously injured her ankle when she stepped into cracked and broken pavement in the roadway. This Court held that the county had a duty to protect pedestrians from dangerous or defective conditions in the improved portion of the highway designed for vehicular travel, even when the injury did not arise as the result of a vehicular accident. This Court went on to hold:

> [T]he *location* of an alleged dangerous or defective condition, *as narrowly defined in the fourth sentence of the statutory clause*, is the critical factor in determining whether a plaintiff is successful in pleading in avoidance of governmental immunity under the highway exception.
>
> * * *
>
> While it is true that the second sentence of *MCL 691.1402(1)*; MSA 3.996(102) (1) generally allows "any person" to recover damages from a governmental agency with highway jurisdiction, *the fourth sentence of the statutory clause specifically limits the state and county road commissions' duty, and resultant liability for breach of this duty, "only to the improved portion of the highway designed for vehicular travel."* The plain language of this sentence, though limiting the duty and resultant liability, does not expressly exclude any particular *class* of injured traveler from recovering damages under the highway exception. Thus, we believe that pedestrians who sue the state or a county road commission are not automatically and entirely excluded, as a class, from the protections of the statutory clause.[18]

The italicized language above establishes that this Court viewed the *limited* duty for the "improved portion of the highway" as applicable only to the state and to counties.

---

The present case is distinguishable not only because it concerned a *city's failure to maintain a sidewalk*, but also because it concerned a city's duty with respect to the creation of *an unnatural accumulation of snow on a city sidewalk*. As we noted in *Nawrocki, supra* at 176, the duty of the state and county road commissions to keep a highway "in reasonable repair" "is significantly limited, extending '*only* to the improved portion of the highway *designed for vehicular travel*.'" (Emphasis in original.) The reason this duty is limited in such fashion is that the state and county governmental agencies do not have as *broad* a duty as other governmental agencies (that broader duty extending not just to highways designed for vehicular travel, but also to bridges, sidewalks, trailways, crosswalks, and culverts, MCL 691.1401[e]) because the fourth sentence of MCL 690.1402(1) limits the state and the counties to a duty to repair and maintain highways designed for vehicular travel. In that respect, state and county governmental agencies have no duty to maintain a sidewalk "in reasonable repair so that it is reasonably safe and convenient for public travel." MCL 690.1402(1).

[18] *Nawrocki, supra* at 168-170 (emphasis added).

Accordingly, the *broader* duty applicable to governmental agencies in general, as set forth in the first sentence of MCL 691.1402(1), is still intact. In other words, even after *Nawrocki,* cities still have a "duty to maintain the highway [including sidewalks] in reasonable repair so that it is reasonably safe and convenient for public travel."[19] And an individual who is injured as a result of the government's failure "to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency."[20]

The majority's order improperly extends the limited holding in *Nawrocki* to this case, in which a defect in the improved portion of the highway is not even at issue. *Nawrocki* does not stand for the proposition that in order for a plaintiff to properly allege a claim of negligence against a city for failure to maintain a sidewalk in reasonable repair, the plaintiff must first show there was a defect in the sidewalk itself. There is simply no language in the statute, or in *Nawrocki,* supporting that conclusion. In fact, a footnote in that case exposes the error in the majority's strained interpretation of the holding in *Nawrocki*:

> We acknowledge that repairing and maintaining the improved portion of the highway in a condition reasonably safe and convenient for public travel represents a *higher duty of care* on the part of government than repairing and maintaining it for *vehicular* travel.[21]

The reference to "public travel" is a reference to travel on surfaces other than roadways designed for "vehicular travel," that is, sidewalks, bridges, trailways, crosswalks, and culverts. Because this Court did not extend its holding to require that a plaintiff alleging a city's failure to maintain a sidewalk in reasonable repair must show an actual defect in "bridges, sidewalks, trailways, crosswalks, and culverts on the highway,"[22] *Nawrocki* is inapplicable to this case, which concerns the unnatural accumulation of snow and ice on a city sidewalk.

Moreover, the majority of four's completely incorrect extension of *Nawrocki* in a one-page order, as opposed to a full opinion, appears to be an attempt by the majority to conceal another example of judicial activism by unrestrained statutory interpretation.

B.    *Haliw Only Addresses the Natural Accumulation of Snow and Ice; MacLachlan Does Not Address the Unnatural Accumulation of Snow and Ice*

---

[19] MCL 691.1402(1).

[20] *Id.*

[21] *Nawrocki*, *supra* at 172 n 28 (emphasis added).

[22] MCL 691.1401(e).

Unlike *Nawrocki*, *Haliw* did concern the accumulation of snow and ice, but the question was whether a *natural* accumulation of snow and ice alone rose to the level of creating a defect upon which liability could rest. The plaintiff slipped on a patch of ice created by a depression in a city sidewalk. Water had pooled in the depression and subsequently hardened into ice. There were no other rough edges or defects in the depression and the ice that formed was level with the sidewalk. It was on the basis of these precise facts that this Court concluded that the "accumulation" of ice was "natural" and that because the hole, by itself, did not contribute to the plaintiff's injury, the city was not liable.

Specifically, this Court held that "an independent defect, other than the accumulation of ice or snow, must be at least a proximate cause of a plaintiff's injury in order for the plaintiff to recover under the statute."[23] Thus, *Haliw* established only that a plaintiff cannot recover on a claim against a governmental agency where the sole proximate cause of the slip and fall is the *natural accumulation* of ice or snow:

> [W]e reject the proposition that the presence of ice alone, *which naturally accumulates* and which is the sole proximate cause of a slip and fall, satisfies the remaining elements of the negligence analysis employed in actions against governmental agencies. In the absence of a persistent defect in the highway (i.e., a sidewalk), rendering it unsafe for public travel at all times, and which combines with the *natural accumulation of ice or snow* to proximately cause injury, a plaintiff cannot prevail against an otherwise immune municipality.[24]

Importantly, in *MacLachlan,* this Court was faced with a case where there was a question of fact concerning whether the snow and ice on a roadway was the result of a natural or unnatural accumulation. The plaintiff was getting off a bus when he came face-to-face with a "wall of snow and ice" created when the city of Lansing plowed the street and had not yet cleared the snow and ice pushed to the side of the road. As the plaintiff walked alongside the wall in an attempt to find an opening so that he could get to the sidewalk, he was hit by a car. The circuit court granted summary disposition to the city, but the Court of Appeals reversed the circuit court's order, concluding that there was a question of fact regarding whether the snow pushed off to the side was the result of a natural or unnatural accumulation of snow and ice. In particular, the Court discussed the distinction between natural versus unnatural accumulations of snow and ice:

> Under the long-recognized "natural accumulation" doctrine, "'a governmental agency's failure to remove the natural accumulations of ice and snow on a public highway does not signal negligence of that public

---

[23] *Haliw, supra* at 309 n 9.

[24] *Id.* at 312 (emphasis added).

authority.'" When, however, the accumulation of ice and snow is the result of unnatural causes, the municipality may be liable.

If there is any question regarding whether the condition was natural or unnatural, determination of this question of fact is within the province of a jury. Here, however, there is no dispute that the wall of ice and snow was created by the plowing efforts of the City of Lansing. Thus, reasonable minds could not differ on the fact that the snow wall was an unnatural accumulation.

We recognize that a city should not be punished merely for removing snow from the roadway. However, a municipality can be held liable if in clearing ice and snow it "introduced a new element of danger not previously present, or created an obstacle to travel, such as a snow bank, that exceeds the inconvenience posed by a natural accumulation." Here it is alleged that a wall of snow and ice, three-to-four-feet high and created by the defendant city, caused an unusual obstacle that increased the hazard to decedent. A jury may conclude that the city's act of piling ice and snow so high that it would be difficult, if not impossible, to traverse, introduced a new element of danger that exceeded the inconvenience posed by a natural accumulation. Plaintiff through his expert presented evidence that the city had adequate time to remove the snow wall from the bus stop and that it would not have been an unreasonable burden in light of the potential risk for the city to leave or create an opening in the piled snow to allow access to the sidewalk in an area designated as a bus stop. We accordingly conclude that plaintiff has created a justiciable question of fact relative to the alleged unnatural accumulation of ice and snow in the form of a snow wall and in avoidance of governmental immunity.[25]

In so holding, the Court of Appeals acknowledged that a city could be "held liable if, in clearing ice and snow, it 'introduced a new element of danger not previously present, or created an obstacle to travel, such as a snow bank, that exceeds the inconvenience posed by a natural accumulation.'"[26]

This Court reversed the judgment of the Court of Appeals. However, the Court's order did not address the issue of natural versus unnatural accumulation of snow and ice; instead it merely stated that "[t]here was no defect in the roadway rendering it unsafe for public travel at all times."[27] Thus, this Court's order did not address a key underlying

---

[25] *MacLachlan v Capital Area Trans Auth*, unpublished decision per curiam of the Court of Appeals, decided January 20, 2005 (Docket No. 252221), pp 5-6 (emphasis added; citations omitted).

[26] *Id.*, citing *Skogman v Chippewa Co Rd Comm,* 221 Mich App 351, 354 (1997).

[27] *MacLachlan*, 474 Mich at 1059.

issue in the case:  whether the plaintiff's injuries occurred as a result of the defendant city's failure to remove an *unnatural accumulation* of snow and ice from the roadway.  All that this Court's order in *MacLachlan* makes clear is that *there was no defect in the highway rendering it unsafe for public travel*.  This Court did not speak definitively to the issue of unnatural accumulation of snow and ice after *Nawrocki* and *Haliw*.

In summary, after *Nawrocki*, it appears clear that this Court has limited state and county liability under the highway exception to defects that appear in the improved portion of the roadway.  This case does not concern a defect in the improved portion of the roadway.  The question here is whether, given the city's duty to maintain sidewalks in reasonable repair, the city could be held liable for intentionally creating an unnatural accumulation of snow and ice so as to make the sidewalk impassable.  Thus, *Nawrocki* is not applicable to this case.  *Haliw* establishes that a governmental entity is not liable for a natural accumulation of snow or ice, and while there was a question of fact in *MacLachlan* concerning whether the snow and ice at issue were the result of a natural or unnatural accumulation, this Court's order in that case does not establish that a governmental entity will not be liable for an unnatural accumulation of snow and ice.

C. *Cities Have a Duty to Maintain Sidewalks in Reasonable Repair*

In *Jones v Enertel, Inc*,[28] this Court unanimously affirmed the statutory duty set forth in MCL 691.1402 requiring cities to maintain sidewalks in reasonable repair:

> MCL 691.1402(1), part of the governmental tort liability act (GTLA), imposes a general duty on municipalities to keep "a highway," including a sidewalk on the highway, under its jurisdiction in reasonable repair:
>
> "Except as otherwise provided in section 2a[2] each governmental agency having jurisdiction over a highway *shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel*.  A person who sustains bodily injury or damage to his or her property by reason of *failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel* may recover the damages suffered by him or her from the governmental agency.  [Emphasis added.]"
>
> The emphasized language places a duty on municipalities to maintain their sidewalks on public highways in reasonable *repair*.  This means that municipalities have an obligation, if necessary, to actively perform repair work to keep such sidewalks in reasonable repair.  This is a greater duty than the duty a premises possessor owes to invitees under

---

[28] *Jones v Enertel, Inc,* 467 Mich 266 (2002).

common-law premises liability principles. The basic duty owed to an invitee by a premises possessor is "to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp*, 464 Mich 512, 516; 629 NW2d 384 (2001). Accordingly, as we discussed in *Lugo*, this duty does not generally require a premises possessor to remove open and obvious conditions because, absent special aspects, such conditions are not unreasonably dangerous precisely because they are open and obvious. However, such reasoning cannot be applied to the statutory duty of a municipality to maintain sidewalks on public highways because the statute requires the sidewalks to be kept in "reasonable repair." The statutory language does not allow a municipality to forego such repairs because the defective condition of a sidewalk is open and obvious. Accordingly, we conclude that the open and obvious doctrine of common-law premises liability cannot bar a claim against a municipality under MCL 691.1402(1).[29]

The question in this case is whether the statutory duty to "maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel" includes a duty not to place temporary obstacles on a highway that render it impassable. The plain language of the statute requires a city to "maintain the highway [including sidewalks] in reasonable repair." The statute further provides that if an individual is injured "by reason of failure of a governmental agency to keep a highway [including sidewalks] under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel," the injured party can recover damages from the governmental agency.[30] If a sidewalk is made impassable because of an intentional act by the city, the city has not fulfilled its duty. The goal of the legislative directive to maintain highways in reasonable repair is to make highways, including sidewalks, "reasonably safe and convenient for public travel."[31] If a city intentionally makes a sidewalk impassable by creating an obstacle of unnatural accumulated snow and ice, it has failed to "maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel." And if plaintiffs can establish that the injuries sustained by the girls occurred because the city failed to keep the sidewalk in "reasonable repair and in a condition reasonably safe and fit for travel," plaintiffs can recover damages from the city.[32]

Moreover, Michigan courts have previously held that a city can be held liable if, in the process of clearing snow and ice, the city "introduced a new element of danger not previously present, or *created an obstacle to travel, such as a snow bank*, that exceeds the

---

[29] *Jones*, *supra* at 268-269 (emphasis added).

[30] MCL 691.1402(1)

[31] *Id*.

[32] *Id.*

inconvenience posed by a natural accumulation."[33]  In fact, in *Kowalczyk v Bailey*,[34] this Court specifically held that cities can be held statutorily liable "for injuries caused by their negligent failure to remove obstructions in their streets after notice thereof."

*Kowalczyk* was cited by the Court of Appeals in a case concerning the village of Yale's duty to remove snow from a sidewalk, *Hampton v Master Products, Inc*.[35]  The plaintiff, Dolly Hampton, was injured after she slipped on a snow bank formed on a sidewalk in the village of Yale.  The plaintiff alleged that the village had neglected its duty to keep the sidewalks in a condition safe for public travel.  The plaintiff introduced photographic exhibits into evidence depicting that "the snow bank was much higher than any snow surrounding it" and there was also testimony "that the village had plowed the street adjacent to the sidewalk."[36]  On the basis of this evidence, the Court of Appeals concluded that "[a] jury could reasonably infer from this that the village was responsible for the unnatural accumulation of snow."[37]  Specifically, the Court noted

> This unnatural accumulation created an obstruction on the sidewalk which should have been removed so that the village could fulfill its duty of keeping the highways "reasonably safe and convenient for public travel." MCL 691.1402; MSA 3.996(102).  The village was liable for injuries caused by its negligent failure to remove the obstruction after it had notice thereof. *Kowalczyk v Bailey,* 379 Mich 568; 153 NW2d 660 (1967).

> \* \* \*

> In this case, the testimony revealed that the drift had been present two days and that the city had plowed the streets.  The jury could reasonably have inferred that the defendant Village of Yale had caused the drift to be placed across the sidewalk through the use of its snowplows.  A

---

[33] *Skogman, supra* at 354 (emphasis added).

[34] *Kowalczyk v Bailey*, 379 Mich 568, 572 (1967).

[35] *Hampton v Master Products, Inc*, 84 Mich App 767 (1978).  Justice Markman, *ante* at 3, questions my reliance on cases that preceded the enactment of the GTLA; however, the fact that there are pre-GTLA cases establishing a duty by cities to maintain sidewalks in a condition that is safe for public travel and that a post-GTLA case cites pre-GTLA cases provides even stronger evidence that the enactment of the GTLA in no way abrogated the existing duty of a city to maintain a sidewalk in a condition that is safe for public travel. Had such duty been abrogated, the *Hampton* Court would not have cited a pre-GTLA case that made reference to the continued existence of such a duty.

[36] *Id.* at 772.

[37] *Id.*

jury could deem the agents of Yale responsible for producing the drift where it was as high as it was.[38]

For the past 100 years, Michigan courts have held that a jury should be allowed to consider whether a city was liable when there is a question about the accumulation of snow and ice on a highway or sidewalk. For example, in *Johnson v City of Marquette,*[39] the plaintiff's wife was killed after the horse-drawn sleigh in which she was riding was overtaken by a runaway team of horses. In that it was proper for a jury to consider whether the city was negligent in failing to remove snow from the street crossing in question, the Court stated:

> We do not think it open to serious question that there was evidence in this case that at this crossing there was an unnatural accumulation of snow and ice, occasioned by shoveling from the railroad track, so as to produce a hump on either side of the track of several inches in depth; thus increasing the height of the bank on either side. We think it was at least a question for the jury as to whether this left the highway in a condition reasonably safe and fit for travel. It is true that the natural accumulations of snow and ice and the natural results of traveling on the same do not of themselves make a case of faulty highway which justifies a jury in finding a municipality in fault. But that is not this case, as the evidence was ample to show that snow was thrown and piled on this highway in such a manner as to make an unnatural hump or ridge on either side of the track.[40]

Of note in *Johnson* is the fact that the decedent's cause of death was not due to the fact that the sleigh in which she was riding came into contact with the unnatural accumulation of snow and ice. Instead, the decedent was trampled to death after the driver of another horse-drawn sleigh lost control of the team when he came upon the unnatural "hump" of snow and ice in the roadway. Again, this Court held that it was proper for the jury to consider whether the decedent's death was proximately caused by the city's negligence:

> The question of whether there is sufficient causal connection between the defective highway and the injuries to the plaintiff's intestate to justify the court in submitting this case to the jury has been sufficiently discussed in dealing with the question of proximate cause. If it is open to the jury to find that the driver would not have lost the control of the team

---

[38] *Id.* at 772-773.

[39] *Johnson v City of Marquette*, 154 Mich 50 (1908).

[40]*Id.* at 53.

but for the defect in the highway, then the connection between the wrong and the injury is sufficient to justify a recovery.[41]

To summarize, Michigan courts have previously held that cities have a duty under MCL 691.1402 to remove unnatural accumulations of snow and ice that create obstructions on highways and sidewalks. Courts have also recognized that if there is a question of fact concerning whether the snow and ice are the result of a natural or unnatural accumulation, juries should be permitted to weigh the evidence and determine whether the governmental entity is liable for failing to remove an unnatural accumulation of snow that proximately causes a plaintiff's injuries.

Applying the law to the facts in this case, neither the Court of Appeals nor the circuit court erred in denying the city's motion for summary disposition. Here, the city was aware that the sidewalk in question was defective and admitted to intentionally piling up plowed snow and ice onto the defective north sidewalk to encourage pedestrians to use the south sidewalk. Consequently, there is a question of fact regarding whether the accumulation of snow and ice was natural or unnatural. The city was aware of the risk that pedestrians (including children) would walk in the road because of unplowed sidewalks. In fact, the city had both an ordinance and a recently adopted city resolution calling for all citizens to clear the sidewalks in front of their property in order to make the sidewalks passable and to prevent pedestrians from walking in the street. Given the city's duty to maintain the sidewalk in reasonable repair "and in a condition reasonably safe and fit for travel," a jury should have been allowed to consider whether the city was negligent in failing to remove the snow and ice from the sidewalk.

## IV. CONCLUSION

In this tragic case, the majority of four has summarily dispensed with the plaintiffs' claim against the city on the basis that the accumulation of snow and ice was not a "defect." In addition, the majority of four's incorrect extension of *Nawrocki* in a one-page order, instead of in a full opinion, appears to be an attempt by the majority to conceal its latest example of judicial activism by unrestrained statutory interpretation. I would find that both lower courts properly concluded that a question of fact exists

---

[41]*Id.* at 57.

regarding whether the city created an unnatural accumulation of snow and ice. Accordingly, the plaintiffs should be permitted to bring that question of fact before a jury.

The statutory duty to maintain the highway "in reasonable repair and in a condition reasonably safe and fit for travel" is not limited to a duty to repair "structural defects." Because both the statute and prior cases interpreting the highway-repair duty can be interpreted so as to find that an *unnatural* accumulation of snow and ice is a "defect" that a governmental entity has an obligation to address given its duty to maintain the sidewalk in reasonable repair and in a condition reasonably safe and fit for travel, and because a question of fact exists with regard to whether the city created an unnatural accumulation of snow and ice, I dissent and would affirm the judgment of the Court of Appeals affirming the circuit court's denial of the city's motion for summary disposition.

KELLY, J., dissents and states as follows:

I would affirm the lower courts' denials of defendant's motion for summary disposition. As I noted in my dissent in *Nawrocki v Macomb Co Rd Comm*,[42] the second sentence of the highway exception[43]

> imposes liability on a government agency having jurisdiction over a highway for failure "to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel . . . ." Thus, liability not only extends to highways in a state of disrepair, but to those in a condition not reasonably safe and fit for travel.[44]

The City of Lansing in this case plowed snow over a city sidewalk, impeding foot travel on it. Hence, a question of fact exists whether the city failed to keep the sidewalk in a condition reasonably safe and fit for travel. Therefore, I concur with part III(C) of Justice Weaver's dissenting statement.

---

[42] *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143 (2000).

[43] MCL 691.1402(1).

[44] *Nawrocki*, 463 Mich at 192 (Kelly, J. dissenting).



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 25, 2008

Clerk

t0416